Edward A. BRANSTAD, and Monroe Branstad, Plaintiffs,

v.

Daniel R. GLICKMAN, Secretary of the United States Department of Agriculture, Defendant.

No. C00–3072–MWB.

United States District Court, N.D. Iowa, Central Division.

Sept. 25, 2000.

David L. Phillips, Phillips, McCollum, Kozlowski & Vald, P.L.C., West Des

Moines, IA, Thomas A. Lawler, Lawler & Swanson, P.L.C., Parkersburg, IA, for Edward A. Branstad, Monroe Branstad.

Kandice Wilcox, Asst. U.S. Attorney, Cedar Rapids, IA, for Daniel R. Glickman.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR A "TEMPORARY INJUNCTION"**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* ............................................... 927
   A. *Legal Background* ...................................... 927
   B. *Factual Background* .................................... 928
   C. *Procedural Background* ................................. 929
      *1. Administrative proceedings* ........................ 929
      *2. The present action for judicial review* ............. 931

II. *LEGAL ANALYSIS* ........................................... 932
   A. *Subject Matter Jurisdiction* ........................... 932
   B. *TRO Or Preliminary Injunction?* ....................... 935
   C. *Standards For Issuance Of A Preliminary Injunction* .... 937
   D. *Consideration Of The "Dataphase Factors"* ............. 938
      *1. Likelihood of success on the merits* ............... 939
         *a. "Likelihood of success" and the judicial review standard* ......... 939
         *b. Likelihood of success under applicable law* ...................... 940
      *2. Irreparable harm* ................................. 941
      *3. Balance of harms* ................................ 942
      *4. The public interest* .............................. 943
   E. *Rule 65's Bond Requirement* ........................... 944

III. *CONCLUSION* .............................................. 945

Are the plaintiff farmers entitled to temporary or preliminary injunctive relief from enforcement actions by the USDA for violations of the "Swampbuster" Act while they pursue judicial review of administrative determinations? The USDA's enforcement actions were prompted by its finding that the farmers had "converted" "wetlands" and failed to complete a timely "good faith restoration" of those wetlands pursuant to an agreement between the parties reached during the pendency of administrative proceedings. The farmers assert that failure to enjoin enforcement actions will bring about the immediate and permanent end of their farming operations. The Secretary of Agriculture argues that the farmers stalled compliance with their "good faith restoration agreement" at their peril while pursuing administrative appeals; therefore, the farmers cannot now claim any "harm" from imposition of the penalties for noncompliance contemplated by that agreement. The court must decide whether to maintain the *status quo* while it considers the farmers' action for judicial review of the USDA's determinations or to permit USDA enforcement actions to proceed.

## I. INTRODUCTION

### A. Legal Background

The court finds that some legal context for the factual and procedural background to follow would be particularly helpful in this case. As the Eighth Circuit Court of Appeals has explained,

"In order to combat the disappearance of wetlands through their conversion into crop lands, Congress passed a law known commonly as 'Swampbuster.'" *Gunn [v. USDA]*, 118 F.3d [1233,] 1235 [ (8th Cir.1997) ], *cert. denied*, [522] U.S. [1111], 118 S.Ct. 1042[, 140 L.Ed.2d 108] (1998) (citing Food Security Act of 1985 §§ 1201, 1221–23, 16 U.S.C. §§ 3801,

3821–24). The law denies eligibility for several federal farm-assistance programs if wetlands are converted to agricultural use. *See National Wildlife Fed'n v. Agricultural Stabilization and Conservation Serv.*, 955 F.2d 1199, 1200 (8th Cir.1992). In addition, the law provides for exemptions, namely wetlands that were converted before December 23, 1985—the effective date of the law. *See Gunn*, 118 F.3d at 1235. Land meeting this exemption can be maintained as it was prior to the effective date of the Act without loss of federal benefits.

*Barthel v. USDA*, 181 F.3d 934, 936 (8th Cir.1999) (footnotes omitted); *Gunn v. USDA*, 118 F.3d 1233, 1235 (8th Cir.1997) ("This law did not make illegal the conversion of wetlands to agricultural use, but did provide that any agricultural production on a converted wetland would cause the farmer to forfeit his eligibility for a number of federal farmer-assistance programs."), *cert. denied*, 522 U.S. 1111, 118 S.Ct. 1042, 140 L.Ed.2d 108 (1998); *Downer v. United States by USDA*, 97 F.3d 999, 1002 (8th Cir.1996) ("Under Swampbuster, persons who plant agricultural commodities on converted wetlands in violation of Swampbuster become ineligible for government price support payments."); *Von Eye v. United States*, 92 F.3d 681, 685 (8th Cir.1996) ("Under the Swampbuster Act, 16 U.S.C. §§ 3821–24, anyone who produces an agricultural commodity on a converted wetland or converts a wetland ... is ineligible for enumerated USDA benefits, including price supports, loans, disaster payments, and crop insurance.").

In short, "[t]he Act's proclaimed purpose is to preserve wetlands, or, if wetlands are altered, to preserve the conditions as altered." *Id.* at 937. Where a farmer improperly alters wetlands that existed prior to December 23, 1985, the USDA can impose penalties including ineligibility for farm program benefits from the date of the violation "in an amount determined by the Secretary to be proportionate to the severity of the violation." *See* 16 U.S.C. § 3821(a); *see also Barthel*, 181 F.3d at 936 & n. 4; *Gunn*, 118 F.3d at 1235; *Downer*, 97 F.3d at 1002; *Von Eye*, 92 F.3d at 685. However, "[a]mong the exemptions to the provisions of Swampbuster is one for wetlands that had been converted to agricultural production before December 23, 1985. The farming of such previously converted wetlands does not make the farmer ineligible for benefits." *See Gunn*, 118 F.3d at 1235 (citing 16 U.S.C. § 3821(d)) (internal citations omitted); *Von Eye*, 92 F.3d at 685.

With this brief legal context, the court turns to the factual and procedural background of the Branstads' motion for a "temporary injunction."

### B. Factual Background

Plaintiff Monroe Branstad purchased real estate in Winnebago County, Iowa, in 1995, which is operated as a farm that produces corn and soybeans. The real estate in question is designated by the United States Department of Agriculture (USDA) as Farm Tract # 2024. Plaintiff Edward Branstad is an "operator" of the farmland, with Monroe Branstad, for purposes of the pertinent statute and USDA regulations.

The administrative record reveals that a tile drainage system was installed on Tract # 2024 sometime in the early 1900s. The tract was used for row crops until the 1930s, then again in the 1950s, but thereafter was used primarily for pasture. The prior owner of the tract was unable to maintain the tile drainage system and did not contest "wetlands" determinations by the USDA in 1987 and 1991. At some point after Monroe Branstad purchased the farmland, the Branstads sought and received permission from the USDA to repair the existing tile drainage system on Tract # 2024, so long as the repairs did not exceed the original size and depth of the existing tile. The Branstads repaired the tile drainage system, presumably in

1997,[1] with smaller plastic drain tile that the Branstads contend did not exceed the original tile system's drainage field. The USDA inspected the installation of the repaired tile system. However, the Branstads allege that, on September 29, 1998, a neighbor filed a complaint with the USDA regarding the repair of the tile drainage system on Tract # 2024.

### C. Procedural Background

#### 1. Administrative proceedings

The Branstads allege that, as a result of the neighbor's complaint, the USDA commenced administrative proceedings against them for "converting" wetlands.[2] In those administrative proceedings, on October 26, 1999, the District Conservationist for Winnebago County, Natural Resources Conservation Service (NRCS), USDA, issued a determination that the Branstads had "converted" 18.4 acres of wetland in 1997. Specifically, the District Conservationist found that the Branstads' "manipulation by installing a drainage tile system on this wetland area is considered an alteration that makes the area more farmable." Preliminary Injunction Hearing Supplemental Exhibit 2, October 26, 1999, letter from District Conservationist (District Conservationist's Determination), at 1. The District Conservationist warned that this determination would likely result in the loss of the Branstads' eligibility for USDA program benefits for 1997, 1998, 1999, and 2000. *Id.*

The Branstads appealed the NRCS determination to the Winnebago County Farm Service Agency Committee (FSA) on November 2, 2000. The FSA held a hearing on November 9, 1999. By letter dated November 15, 2000, to the State Conservationist of the NRCS, the FSA advised the NRCS that it had determined that the NRCS had not considered all of the evidence before making its determination that the Branstads had converted wetlands and recommended that the NRCS review its decision. Preliminary Injunction Hearing Supplemental Exhibit 3, November 15, 1999, letter from FSA to NRCS (FSA Recommendation). However, by letter dated February 7, 2000, the FSA notified the Branstads that the state office of the NRCS had advised the FSA that no further review of the matter was necessary and that the prior determination by the NRCS—that the Branstads had converted wetlands in the course of their repair of the tile drainage system—was accurate. Preliminary Injunction Hearing Supplemental Exhibit 4, February 7, 2000, letter from USDA to Branstads (FSA Decision), at 1. The letter stated the FSA's conclusion that the Branstads had improperly converted wetlands and were therefore ineligible for various farm program benefits paid to the Branstads in 1998 and 1999, totaling over $400,000, which the FSA demanded be repaid by March 8, 2000. *Id.* at 1–2. The FSA also notified the Branstads that, if they were determined to have acted in "good faith," they would be given a reasonable period of time, not to exceed one year, to implement measures to restore the converted wetlands and they would then qualify for reinstatement of benefits. *Id.* at 3. On October 26, 1999, and February 10, 2000, the Agency reduced the acreage on Tract # 2024 found to be "converted wetland" to 12.6 acres. *See* Preliminary Injunction Hearing Supplemental Exhibit 5, Hearing Officer's Appeal Determination, at 3, ¶ 18.

On February 25, 2000, the Branstads entered into a "Wetland Restoration Agreement: Good Faith Restoration" with the NRCS for restoration of 12.6 acres of

---

1. The USDA documents cited in more detail below refer to the Branstads' "conversion" of wetlands as having taken place in 1997.

2. The documents attached to the determination by the NRCS reflect that the wetlands determinations for the Branstads' property were "updated ... [d]ue to whistleblower complaint." Preliminary Injunction Hearing Supplemental Exhibit 2, October 26, 1999, letter from District Conservationist (District Conservationist's Determination), at 6.

wetland in Tract # 2024. Preliminary Injunction Hearing Supplemental Exhibit 1 ("Wetland Restoration Agreement" and "Wetland Restoration Plan"). This Wetland Restoration Agreement stated that the specified restoration conditions had to be created and maintained by the Branstads to receive a "Good Faith Exemption" for continuation of farm program benefits. *Id.* at 1. It also specified that the "Good Faith Exemption" applied to 12.6 acres of wetland in Tract # 2024 and provided that "[a]ll restoration practices will be accomplished and applied by June 1, 2000." *Id.*

At about the same time the Branstads entered into the "Wetland Restoration Agreement," they also appealed the FSA Determination of February 7, 2000, to the USDA National Appeals Division (USDA NAD). On April 12, 2000, the Branstads received an administrative evidentiary hearing before a Hearing Officer of the USDA NAD. The Hearing Officer issued an Appeal Determination on April 20, 2000, in which he noted that "the monetary penalty is not an issue of appeal as the Agency agrees to waive the assessments once the Appellant restores the converted wetland to its prior state." Preliminary Injunction Hearing Supplemental Exhibit 5, Hearing Officer's Appeal Determination, at 1. On the issues raised on the Branstads' administrative appeal, the Hearing Officer held that the Branstads had proved, by the preponderance of the evidence, that the NRCS "wetlands" determinations pertaining to Tract # 2024 in 1987 and 1991 were in error, *id.* at 5–6; that the NRCS failed to consider all of the evidence in making its determination regarding the Branstads' alleged conversion of wetlands during their repair of the tile drainage system, *id.* at 6; and, specifically, that the NRCS had failed to do a "scope and effect" determination based on the evidence presented to it. *Id.* Thus, the Hearing Officer concluded that the NRCS's certification of a wetland on the Branstads' Tract # 2024 was erroneous and that the NRCS's decision that the Branstads had converted a wetland in the course of their repair of the tile drainage

system on Tract # 2024 was erroneous. *Id.* at 7.

However, on May 18, 2000, the FSA requested a "Director Review" of the Hearing Officer's decision. *See* Preliminary Injunction Hearing Supplemental Exhibit 6, Request for Director's Review. The Branstads filed a "Response To Request For Direct [sic] Review" at some' time thereafter. *See* Preliminary Injunction Hearing Supplemental Exhibit 7 (undated). On July 17, 2000, some 42 days after the FSA requested a Director Review, the Acting Director issued a "Director Review Determination," in which she concluded that, "as a result of the Agency and NRCS good faith agreement with the Appellants, there was no adverse decision left to hear and the Appellants' appeal of the [converted wetlands] determination is moot." Preliminary Injunction Hearing Supplemental Exhibit 8, Director Review Determination, at 2. The Acting Director also concluded that the wetlands determinations in 1987 and 1991 were in accordance with then-existing regulations, were not appealed by the owner of the tract at that time, and consequently "the wetland determination had become final and was no longer subject to appeal," so that "[t]he Hearing Officer's determination concerning the 1987 and 1991 wetland determinations exceeded the scope of NAD jurisdiction in this matter." *Id.* at 3. Therefore, the Acting Director vacated the Hearing Officer's determinations and made a "final determination" pursuant to 7 U.S.C. § 6992(d) that denied the Branstads relief. *Id.*

The Branstads' Wetland Restoration Agreement with the NRCS, dated February 25, 2000, provided that the Branstads would complete restoration of wetlands on Tract # 2024 by June 1, 2000. Wetland Restoration Agreement at 1. On June 1, 2000, the FSA notified the Branstads' attorney that the NRCS had agreed that "until further notice the June 1st date has been suspended pending the final decision

of the NAD appeal." Preliminary Injunction Hearing Supplemental Exhibit 9, June 1, 2000, letter to Mr. Lawler (FSA Deadline Extension). The deadline for this extension would have passed on July 17, 2000, with the rendering of the Director Review Determination. However, the Branstads apparently requested and received a further extension of the wetland restoration date to September 18, 2000, although this request and resulting notice of an extension were not submitted to the court as exhibits in these proceedings. On August 17, 2000, the FSA responded to yet another request for an extension by notifying the Branstads' counsel that "the [USDA] has met all administrative appeal requirements on the converted wetland and [the Branstads], in order to remain eligible for USDA benefits, must comply with the revised wetland restoration date of September 18, 2000." Preliminary Injunction Hearing Supplemental Exhibit 10, August 17, 2000, letter from FSA to Mr. Phillips (FSA Denial of Further Extension). The letter noted further that "[t]he regulation does not contemplate any further delays because [the Branstads] may wish to pursue other legal proceedings" and that the "determination of good faith is dependent upon the agreement signed earlier by [the Branstads] to restore the wetland within the agreed upon timeframe [sic]." *Id.* The Branstads represented to the court, and the Secretary did not dispute, that the FSA has indicated that it will begin enforcement action on September 30, 2000, although no notice of an enforcement deadline was submitted to the record in this action. The Branstads' counsel represented further that the threatened enforcement included not only loss of eligibility for past and future farm program benefits, but penalties of $25,000 per day for each day restoration of the wetlands was not completed as required by the Wetland Restoration Agreement.

### 2. *The present action for judicial review*

The Branstads filed their present action for judicial review of the "final determination" in the administrative proceedings on September 11, 2000, in a complaint seeking declaratory and injunctive relief. As to declaratory relief, the Branstads seek a determination that the final agency action issued on July 17, 2000, is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, in the following respects: (1) the Acting Director of the USDA NAD did not complete a timely review of the Hearing Officer's determination within 10 business days of May 28, 2000, as required by 7 U.S.C. § 6998(b)(1); (2) the 1987 and 1991 wetland determinations are appealable and were incorrect, and the Branstads are being denied certain USDA farm program benefits on the basis of these erroneous wetland determinations; and (3) the Acting Director of the NAD has been disproportionately overturning decisions by Hearing Officers that were favorable to producers. As to injunctive relief, the Branstads' complaint seeks an injunction that enjoins the USDA from not granting a further extension of the deadline for compliance with the Wetland Restoration Agreement until the conclusion of this action for judicial review.

The Branstads therefore seek the following relief in this action: (1) the injunctive relief requested just above; (2) reversal of the Acting Director's final determination in the administrative proceedings and entry of a judgment compelling the USDA to reinstate the Hearing Officer's determination as the final decision of the agency; (3) remand of this case for agency action in conformity with the court's judgment; (4) a finding that the USDA's position was not substantially justified with a consequent award of attorney fees pursuant to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504; (5) an award of costs; and (6) such other and further relief as the court deems appropriate.

This matter is now before the court pursuant to plaintiffs' September 18, 2000,

motion for a "temporary injunction." In that motion, the Branstads seek an order enjoining the USDA from terminating the extension of time to comply with the Wetland Restoration Agreement until the completion of judicial review. By order dated September 20, 2000, the court set a telephonic hearing on the Branstads' motion for September 22, 2000. The United States was served with the Branstads' complaint and motion for a "temporary injunction" on September 21, 2000. At the hearing on September 22, 2000, plaintiffs Edward A. Branstad and Monroe Branstad were represented by David L. Phillips of Phillips, McCollum, Kozlowski & Vald, P.L.C., in West Des Moines, Iowa,[3] and defendant Daniel R. Glickman, Secretary, United States Department of Agriculture, was represented by Kandice Wilcox, Assistant United States Attorney, of Cedar Rapids, Iowa.

At the hearing the court requested certain documents from the parties, which were provided by facsimile on September 22, 2000, and which now appear in the record of this action as Preliminary Injunction Hearing Supplemental Exhibits. The court also requested "letter briefs," which were to be filed no later than 10:00 a.m. on September 25, 2000, on the question of the court's subject matter jurisdiction over preliminary injunctive relief in this matter. The Secretary sent the court such a letter brief by facsimile just before the deadline. This matter is now fully submitted and the court turns to its legal analysis of the Branstads' motion for a "temporary injunction."

## II. LEGAL ANALYSIS

### A. Subject Matter Jurisdiction

At the hearing on September 22, 2000, the Secretary asserted that there was at least a question as to whether the court had subject matter jurisdiction to issue temporary or preliminary injunctive relief in this action for judicial review. As the Eighth Circuit Court of Appeals recently reiterated, "It is axiomatic that the federal courts lack plenary jurisdiction." *Southwestern Bell Tel. Co. v. Connect Communications Corp.*, 225 F.3d 942, 945 (8th Cir.2000) (citing *Godfrey v. Pulitzer Publ'g Co.*, 161 F.3d 1137, 1141 (8th Cir.1998)). Rather, "[t]he inferior federal courts may only exercise jurisdiction where Congress sees fit to allow it." *Id.* Therefore, courts must resolve challenges to subject matter jurisdiction first. *United States v. Negele*, 222 F.3d 443, 446 (8th Cir.2000) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

The Secretary asserts that the United States may not be sued without its consent and that the Administrative Procedure Act (APA), on which the present action is premised, does not provide subject matter jurisdiction in this case. The Secretary argues that a right to judicial review under the APA does not equal a right to preliminary injunctive relief while such review proceeds. The Secretary relied on *Preferred Risk Mut. Ins. Co. v. United States*, 86 F.3d 789, 792 (8th Cir.1996), *cert. denied*, 520 U.S. 1116, 117 S.Ct. 1245, 137 L.Ed.2d 327 (1997), as authority for these propositions. The court finds that *Preferred Risk* stands for the first two propositions, but not the third.

In *Preferred Risk*, the Eighth Circuit Court of Appeals recognized "the well-established proposition that the United States may not be sued without its consent," *Preferred Risk*, 86 F.3d at 792, and that this sovereign immunity is jurisdictional. *Id.* at 793. Moreover, the court recognized that "[t]he APA is not an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Id.* at 792 n. 2 (citing *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). Rather, subject matter jurisdiction must be founded on 28

---

**3.** The Branstads' complaint and motion for a "temporary injunction" were filed by co-counsel Thomas A. Lawler of Lawler & Swanson, P.L.C., in Parkersburg, Iowa.

U.S.C. § 1331, federal question jurisdiction. *Id.* However, the court in *Preferred Risk* specifically recognized that "[s]ection 702 of the APA explicitly consents to judicial review of agency action where such action results in a legal wrong or adversely affects the plaintiff 'within the meaning of a relevant statute.'" *Id.* at 792 (quoting 5 U.S.C. § 702).

> Thus, this waiver contains two separate requirements: 1) the person claiming a right to review must identify some agency action, and 2) the party seeking review must show that he has suffered a legal wrong or been adversely affected by that action within the meaning of a relevant statute.

*Id.* (citing *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 882–83, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). In other words, "although the plaintiff need not demonstrate that the substantive statute independently waives federal sovereign immunity, which is the function of section 702, the plaintiff must identify a substantive statute or regulation that the agency action had transgressed *and* establish that the statute or regulation applies to the United States." *Id.*

■ Here, subject matter jurisdiction does indeed stem from a "federal question" within the meaning of 28 U.S.C. § 1331, because the Swampbuster Act is a federal statute authorizing the USDA to withhold federal farm program benefits to persons who violate the Act. *See* 16 U.S.C. § 3821; *see also Preferred Risk,* 86 F.3d at 792 & n. 2 (the APA does not grant subject matter jurisdiction, which must instead be founded on 28 U.S.C. § 1331). The Branstads have identified specific federal agency action, review of which is sought under the APA, and they have asserted that they have suffered a legal wrong from improper application of the Swampbuster Act by the USDA. *Preferred Risk,* 86 F.3d at 792. Moreover, they have shown that the Swampbuster Act "applies to the United States," because, in 16 U.S.C. § 3821, the Swampbuster Act specifically authorizes

the actions of the USDA upon which the Branstads' complaint is founded. *See id.*

Furthermore, the court finds that the Branstads have established other requirements for this court's judicial review of agency action under the APA. Although "the APA provides that judicial review of agency action is available only 'if there is no other adequate remedy in a court,'" *James v. Caldera,* 159 F.3d 573, 578–79 (Fed.Cir.1998) (quoting 5 U.S.C. § 704, and considering whether a suit under the Tucker Act in the Court of Federal Claims provided an adequate remedy precluding APA review); *accord Newton County Wildlife Ass'n v. United States Forest Serv.,* 113 F.3d 110, 114 (8th Cir.1997) (finding that, under the Migratory Bird Treaty Act (MBTA), the APA stated the "scope of review," but the FIFRA stated the mechanism for obtaining judicial review and the remedies therefor), *cert. denied,* 522 U.S. 1108, 118 S.Ct. 1035, 140 L.Ed.2d 102 (1998), the APA is the correct vehicle for judicial review of USDA administrative action under the Swampbuster Act. *See Barthel,* 181 F.3d at 937 (applying APA judicial review to USDA determinations under the Swampbuster Act); *Downer,* 97 F.3d at 1002 (same); *Von Eye,* 92 F.3d at 685 (same). The Branstads also seek judicial review of a "final" agency determination. 5 U.S.C. § 704 (permitting review of "final" agency action); *In re Russell,* 155 F.3d 1012, 1013 (8th Cir.1998) ("the APA waives immunity only when the agency action is final") (citing 5 U.S.C. § 704); Director Review Determination, at 3 (identifying that decision as a "final" agency determination in this case under 7 U.S.C. § 6992(b)).

Yet, the court's subject matter jurisdiction analysis is not finished, because the Secretary also asserts that, even if the APA waives sovereign immunity for judicial review, it does not waive immunity for temporary or preliminary injunctive relief. However, "[t]he APA waives sovereign immunity of the United States ... for '[a]n action in a court of the United States

seeking relief other than money damages.'" *James,* 159 F.3d at 578 (quoting 5 U.S.C. § 702). "While the APA does create a general waiver of sovereign immunity as to equitable claims against government agencies, 'nothing in the APA "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."'" *Up State Fed. Credit Union v. Walker,* 198 F.3d 372, 375 (2d Cir.1999) (quoting *Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 143 (2d Cir.1999), in turn quoting 5 U.S.C. § 702). Thus, the judicial review permitted under the APA specifically permits declaratory and injunctive relief of the type sought here. *See id.;* 5 U.S.C. § 702.[4]

Moreover, the relief available under the APA, and not prohibited by the Swampbuster Act, includes "relief pending review," as follows:

### § 705. Relief pending review

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. *On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court,* including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, *may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.*

5 U.S.C. § 705 (emphasis added). Courts have recognized that this standard is the same as the standard for issuance of a preliminary injunction. *See, e.g., Cronin v. USDA,* 919 F.2d 439, 446 (7th Cir.1990) ("If the administrative record is so vast or complicated that the district judge cannot analyze it and make his final decision in

time to avert harm to the plaintiff due to delay, then the plaintiff can move for a preliminary injunction. That would be the kind of case in which a court of appeals might grant a stay of administrative action if that court was the first tier of judicial review of the agency's action, rather than the district court. 5 U.S.C. § 705; *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921 (D.C.Cir.1958); *Busboom Grain Co. v. ICC,* 830 F.2d [74,] 75 [ (7th Cir. 1987) ]. The standard is the same whether a preliminary injunction against agency action is being sought in the district court or a stay of that action is being sought in this court. *Id.*"); *Ohio v. Nuclear Regulatory Commission,* 812 F.2d 288, 290 (6th Cir. 1987) (holding that a motion for a § 705 stay should be judged by the same standard as a motion for a preliminary injunction); *Kansas ex rel. Graves v. United States,* 86 F.Supp.2d 1094, 1100 (D.Kan. 2000) ("Pursuant to the Administrative Procedure Act, the court may, 'to the extent necessary to prevent irreparable injury, ... issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.' 5 U.S.C. § 705. The grant or denial of a preliminary injunction is within the sound discretion of the district court and will be set aside only if the ruling is based on an error of law or constitutes an abuse of discretion."); *Charter Township of Van Buren v. Adamkus,* 965 F.Supp. 959, 963 (E.D.Mich.1997) ("To the extent necessary to prevent irreparable injury, this Court 'may issue all necessary and appropriate process to postpone the effective date of an agency action....' 5 U.S.C. § 705. In interpreting this section, the Sixth Circuit has held that a motion for a § 705 stay should be judged by the same standard as a motion for a preliminary injunction. *Ohio v. Nuclear*

---

**4.** Section 702 also provides that "any mandatory or injunctive relief shall specify the Federal officer or officers (by name or by title),

and their successors in office, personally responsible for compliance." 5 U.S.C. § 702.

*Regulatory Commission,* 812 F.2d 288, 290 (6th Cir.1987).").

The Swampbuster Act does not itself expressly or impliedly forbid such relief. *See* 5 U.S.C. § 702; *and compare Up State Fed. Credit Union,* 198 F.3d at 375 (finding a prohibition, for example, in the Tucker Act on relief other than remedies provided by the Court of Federal Claims in actions that arise out of a contract with the United States). However, in a letter brief, received by facsimile on September 25, 2000, the Secretary contends that such relief is expressly and/or impliedly forbidden by 15 U.S.C. § 714b(c), which provides that the Commodity Credit Corporation (CCC), which funds and pays farm program benefits for which the Branstads have applied,[5] "[m]ay sue and be sued, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property." The Secretary contends that, while this case has not been brought directly against the CCC, the practical effect of such an injunction, if granted, would affect the CCC's operation. This argument, of course, fails on its own terms. As the Secretary concedes, the Branstads' action is not brought against the CCC and no preliminary injunction in this action would be directed to the CCC. Nor, the court concludes, would it affect the operation of the CCC. Rather, the preliminary injunction would only enjoin the USDA from declaring the Branstads to be *ineligible* for farm program benefits administered by the CCC until the conclusion of judicial review of USDA determinations. Thus, preliminary injunctive relief would only be directed to and have an effect upon the operations of the USDA.

The Secretary also argues, in his letter brief, that the scope of judicial review under 5 U.S.C. § 706 does not encompass the USDA's decision not to grant an extension for compliance with the Wetland Restoration Agreement, because there is no "final" agency action arising from that enforcement decision regarding the Branstads' non-compliance with the Agreement. Section 704, not § 706, provides for review of "final agency action." However, § 704 also provides that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. The preliminary injunctive relief sought here goes to such a "procedural" action, the denial of a further extension of the deadline for compliance with the Wetland Restoration Agreement, and thus is "reviewable" pursuant to § 704. Moreover, § 705 itself specifically provides that this court may "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceeding," which in this case, permits the court, if otherwise appropriate, to grant a preliminary injunction to postpone the effective date of the USDA's "final decision" of July 17, 2000, which set in motion the USDA's enforcement action. 5 U.S.C. § 705 Section 705 also permits the court, if otherwise appropriate, to issue an preliminary injunction as "necessary and appropriate process ... to preserve status and rights [of the Branstads] pending conclusion of the review proceedings." *Id.*

Thus, the court concludes that it has subject matter jurisdiction over the Branstads' motion for a "temporary injunction," and will proceed to consideration of the merits of that motion.

### B. TRO Or Preliminary Injunction?

It is not entirely clear from the Branstads' September 18, 2000, motion for a "temporary injunction" whether they are seeking a temporary restraining order

---

**5.** The farm program benefits funded and paid by the CCC for which the Branstads have applied, according to the Secretary, include a year 2000 Market Loss Assistance program payment, a 1999 Oil Seed Payment, and a Conservation Resource Program (CRP) payment.

(TRO) or a preliminary injunction. The two kinds of immediate injunctive relief differ in several respects.

Rule 65 of the Federal Rules of Civil Procedure provides that "[n]o preliminary injunction shall be issued without notice to the adverse party," FED.R.CIV.P. 65(a)(1), while a TRO "*may be* granted without written or oral notice to the adverse party or that party's attorney," but "only if" certain requirements are met. *See* FED. R.CIV.P. 65(b) (emphasis added). Thus, a TRO *may be*, but does not have to be, issued *ex parte*, but a preliminary injunction cannot be issued without notice to the adverse party. However, although a preliminary injunction cannot be issued without notice, the fact that notice is provided does not necessarily mean that the relief granted will be a preliminary injunction rather than a TRO.

While Rule 65(a) expressly requires "notice" before a preliminary injunction is issued, it does not expressly *require* a hearing before a preliminary injunction can be issued. FED.R.CIV.P. 65(a). Nevertheless, Rule 65(a)(2) clearly contemplates that a hearing will precede the issuance of a preliminary injunction. *See* FED.R.CIV.P. 65(a)(2) (providing that "the hearing of an application for a preliminary injunction" may be consolidated with trial on the merits). A TRO, which may be granted *ex parte*, plainly does not *require* an adversarial hearing. FED.R.CIV.P. 65(b). Moreover, the Supreme Court has suggested that, "where an adversary hearing has been held, and the court's basis for issuing the order strongly challenged, classification of the potentially unlimited order as a temporary restraining order seems particularly unjustified." *Sampson v. Murray,* 415 U.S. 61, 87, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (also noting that, "[a] district court, if it were able to shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions, would have virtually unlimited authority over the parties in an injunctive proceeding.").

■ A more clearly dispositive distinction between the two kinds of preliminary injunctive relief is that "[e]very temporary restraining order granted without notice ... shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period." FED.R.CIV.P. 65(b). This language indicates that a TRO is distinguished from a preliminary injunction on the basis of the limited duration of a TRO. It is also clear that an order granting a preliminary injunction is immediately appealable, while an order granting a TRO is not. *See Baker Elec. Co-op., Inc. v. Chaske,* 28 F.3d 1466, 1472 (8th Cir.1994).

■ The Eighth Circuit Court of Appeals looks to the "substance" of the order, rather than its title, to determine whether the order is a TRO or a preliminary injunction, and hence whether it is or is not appealable. For example, in *Baker Electric Cooperative,* the Eighth Circuit Court of Appeals held that an injunction that was in force for more than ten days, although labeled a "TRO"—and initially issued *ex parte,* but later modified after an adversarial proceeding—was necessarily a preliminary injunction and therefore immediately appealable. *Id.* Similarly, in *Nordin v. Nutri/System, Inc.,* 897 F.2d 339 (8th Cir.1990), the court found that "[t]he fact that the April 18 order enjoining arbitration was titled as a temporary restraining order does not affect our ability to entertain jurisdiction under 28 U.S.C. § 1292(a)(1)." *Nordin,* 897 F.2d at 343. Rather, the court concluded that "[i]f the order is in substance a preliminary injunction rather than a temporary restraining order, it is appealable under § 1292(a)(1)." *Id.* As to "substance" of the order in *Nordin,* "[t]he April 18 temporary restraining order—which has no expiration date on its

face and which exceeded the ten-day limit of Fed.R.Civ.P. 65(b) as of the date of the notice of appeal—must be treated as a preliminary injunction and therefore is appealable." *Id.* Also, in *Quinn v. Missouri,* 839 F.2d 425 (8th Cir.1988), the court expressly stated that "[t]he law is ... that where a TRO exceeds the ten-day limit provided in Fed.R.Civ.P. 65(b), and has the practical effect of a preliminary injunction, the appellate court may treat it as a preliminary injunction and exercise jurisdiction under 28 U.S.C. § 1292(a)(1)." *Quinn,* 839 F.2d at 426. These decisions lead to the conclusion that any injunctive relief exceeding the ten-day limit for a TRO in Rule 65(b) that is issued after notice to the adverse party and an adversarial hearing should be considered a preliminary injunction.

In the present case, the USDA was served with the Branstads' complaint and motion and the USDA appeared through counsel for an adversarial proceeding on the Branstads' motion. Thus, any immediate injunctive relief the court may issue will not be "without written or oral notice to the adverse party or that party's attorney," so that it does not necessarily have to be a TRO. *Compare* FED.R.CIV.P. 65(b) (providing for the issuance of a TRO without notice to the adverse party). Moreover, the court heard oral arguments and received evidence beyond the allegations in the Branstads' complaint and motion in contested proceedings. *See Sampson,* 415 U.S. at 87, 94 S.Ct. 937 ("[W]here an adversary hearing has been held, and the court's basis for issuing the order strongly challenged, classification of the potentially unlimited order as a temporary restraining order seems particularly unjustified."). Finally, and perhaps most importantly in this case, the parties here have agreed that the relief this court will issue on the Branstads' motion, if any, will be a preliminary injunction, which may extend for a period of more than ten days, and which may be subject to modification upon either party's motion and request for consider-

ation of additional evidence. Therefore, any immediate relief the court may issue on the Branstads' September 18, 2000, motion will be in the form of a preliminary injunction, may last for more than ten days, and will be immediately appealable.

### C. Standards For Issuance Of A Preliminary Injunction

As noted above, the standards for relief pending judicial review under 5 U.S.C. § 705 are the same as those for issuance of a preliminary injunction. *See, e.g., Cronin,* 919 F.2d at 446; *Ohio v. NRC,* 812 F.2d at 290; *Kansas ex rel. Graves,* 86 F.Supp.2d at 1100; *Charter Township of Van Buren,* 965 F.Supp. at 963. "The burden of establishing the propriety of a preliminary injunction is on the movant." *Baker Elec. Co-op., Inc.,* 28 F.3d at 1472.

As the Eighth Circuit Court of Appeals recently explained,

The relevant factors on a motion for a preliminary injunction are: "(1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest." *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.,* 997 F.2d 484, 485–86 (8th Cir.1993) (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (*en banc*)). "A district court has broad discretion when ruling on requests for preliminary injunctions, and we will reverse only for clearly erroneous factual determinations, an error of law, or an abuse of that discretion." *United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1179 (8th Cir. 1998) (citation omitted).

*Entergy, Ark., Inc. v. Nebraska,* 210 F.3d 887, 898 (8th Cir.2000); *Bandag, Inc. v. Jack's Tire & Oil, Inc.,* 190 F.3d 924, 926 (8th Cir.1999); *Iowa Right to Life Committee, Inc. v. Williams,* 187 F.3d 963, 966 (8th Cir.1999). In accordance with the

usual practice in this circuit, this court will refer to these "relevant factors" as the "*Dataphase* factors." *See, e.g., Entergy, Ark., Inc.*, 210 F.3d at 893. As the Eighth Circuit Court of Appeals has also explained,

> These factors are not a rigid formula. However, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Thus, to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm. *See Adam–Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir.1996).

*Bandag, Inc.*, 190 F.3d at 926; *Baker Elec. Co-op., Inc.*, 28 F.3d at 1472 ("No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance, they weigh towards granting the injunction. However, a party moving for a preliminary injunction is required to show the threat of irreparable harm.") (internal quotation marks and citations omitted). The court will consider the requirements for each of these "*Dataphase* factors" in more detail below.

### D. Consideration Of The "*Dataphase* Factors"

The Branstads assert that, without an extension of the deadline for compliance with the Wetland Restoration Agreement until the conclusion of this action for judicial review, they will be irreparably harmed by enforcement action by the USDA that is scheduled to commence on September 30, 2000. They contend that such enforcement action will deny them farm program benefits that are necessary to the continuation and financial viability of their farming operation and such enforcement action may also subject them to damages in state-law actions for interference with upland owners' drainage rights. On the other hand, the Branstads contend

that the USDA will suffer no comparable harm from extending the restoration agreement, because any conversion of wetlands has already occurred. Moreover, they contend that, should their judicial review ultimately be unsuccessful, they can complete the restoration required by the Wetland Restoration Agreement in approximately 72 hours, which will impose no further undue burden on the USDA or the public interest. They also argue that, because they were permitted to suspend performance of the Wetland Restoration Agreement during the pendency of administrative appeals, and the one-year period for "good faith" restoration permitted by USDA regulations, *see* 7 C.F.R. § 12.5 (allowing a person who has converted wetlands in "good faith" is allowed a reasonable period of time, but not to exceed one year, to implement restoration measures or practices), will not run until next February, they should be permitted a further extension of time to comply with the Agreement.

The Secretary argues that the only consideration for the Wetland Restoration Agreement was continuation of benefits and suspension of penalties, but that the Agreement is silent about any extension until the completion of administrative or other appeals. The Secretary also contends that the Branstads failed to act upon the requirements of the Agreement at their peril during the pendency of the administrative appeals and cannot now complain about "harms" specifically contemplated by the Agreement if they failed to comply with it by its deadline. The Secretary also contends that, in the Agreement, the Branstads specifically conceded that they had converted wetlands, so that ordering the USDA to pay benefits to persons who are plainly ineligible for them, because they converted wetlands, would be ordering the USDA to act contrary to law. The Secretary also argues that the limited scope of judicial review and the nature of the administrative record make it unlikely that the court will find any basis for concluding that the USDA's actions were "ar-

bitrary and capricious." The Secretary points out that nothing about regulations that *permit* a good faith restoration to take up to one year *requires* such a period to be granted in this case. Finally, the Secretary argues that there is a significant public interest in protecting wetlands expressed by Congress in the Swampbuster Act, while there is little public interest in continuing farm program benefits to farmers who have violated that Act and have failed to perform a restoration agreement, even if an injunction preventing denial of benefits would keep those farmers in business.

The court turns to consideration of how these arguments balance out in light of the "*Dataphase* factors."

### 1. *Likelihood of success on the merits*

"[A]djudication of a motion for a preliminary injunction is not a decision on the merits of the underlying case." *Hubbard Feeds v. Animal Feed Supplement, Inc.,* 182 F.3d 598, 603 (8th Cir.1999). Indeed, "[t]he standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that to obtain a permanent injunction the movant must attain success on the merits." *Bank One v. Guttau,* 190 F.3d 844, 847 (8th Cir.1999) (citing *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)), *cert. denied sub nom. Foster v. Bank One,* —— U.S. ——, 120 S.Ct. 1718, 146 L.Ed.2d 641 (2000); *Randolph v. Rodgers,* 170 F.3d 850, 857 (8th Cir.1999) (also quoting *Amoco Production Co.*). In contrast, "[a]t the early stage of a preliminary injunction motion, the speculative nature of this particular ["likelihood of success"] inquiry militates against any wooden or mathematical application of the test. Instead, a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."

*United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1179 (8th Cir.1998) (internal citations and quotation marks omitted). Thus, the court is not deciding whether the movant for a preliminary injunction will ultimately win. *Heather K. v. City of Mallard,* 887 F.Supp. 1249, 1258 (citing *Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d 367, 371 (8th Cir.1991)). Rather, as this court explained in its consideration of the "*Dataphase* factors" in *Curtis 1000, Inc. v. Youngblade,* 878 F.Supp. 1224 (N.D.Iowa 1995),

> Likelihood of success on the merits requires that the movant find support for its position in governing law. In order to weigh in the movant's favor, the movant's success on the merits must be "at least ... sufficiently likely to support the kind of relief it requests."

*Youngblade,* 878 F.Supp. at 1247 (citations omitted).

### a. *"Likelihood of success" and the judicial review standard*

In the present case, the weight of the "likelihood of success on the merits" factor depends upon the likelihood that the Branstads can show that the USDA's "final determination" that they "converted" wetlands, and that their entry into a "good faith wetland restoration agreement" mooted that dispute, is arbitrary and capricious, or otherwise contrary to law. *See* 5 U.S.C. § 706; *see also Barthel,* 181 F.3d at 937; *Downer v. United States,* 97 F.3d 999, 1002 (8th Cir.1996) (in an action for judicial review of administrative determinations concerning wetlands under the Swampbuster Act, the court concluded that "[o]ur review ... is limited to a determination of whether the decisions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'") (quoting 5 U.S.C. § 706(2)(A)). "This narrow review entails a 'searching and careful' de novo review of the administrative record presented to determine 'whether the decision was based on a consideration of the relevant factors and

whether there has been a clear error of judgment.'" *Id.* (quoting *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)).

More specifically,

> To perform this review the court looks to whether the agency considered those factors Congress intended it to consider; whether the agency considered factors Congress did not intend it to consider; whether the agency failed entirely to consider an important aspect of the problem; whether the agency decision runs counter to the evidence before it; or whether there. is such a lack of a rational connection between the facts found and the decision made that the disputed decision cannot "be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). If the agency itself has not provided a reasoned basis for its action, the court may not supply one. *Id.*

> Nonetheless, the reviewing court may not substitute its judgment for that of the agency and must give substantial deference to agency determinations. *Id.* This deference is particularly appropriate when the agency determination in issue concerns a subject within the agency's own area of expertise. *Marsh,* 490 U.S. at 377–78, 109 S.Ct. at 1861–62. An agency making fact-based determinations in its own field of expertise, particularly where those determinations are wrapped up with scientific judg-.ments, must be permitted "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Id.* at 378, 109 S.Ct. at 1861.

*Downer,* 97 F.3d at 1002.

#### b. *Likelihood of success under applicable law*

The court set out briefly at the outset of this decision the goal of the Swampbuster

Act as preservation of wetlands, and the "stick" for enforcement of its provision as loss of federal farm program benefits if wetlands are improperly converted. *See Barthel,* 181 F.3d at 936; *Gunn,* 118 F.3d at 1235. The Swampbuster Act also provides that "[n]o person shall become ineligible ... for program loans or payments ... [a]s the result of the production of an agricultural commodity on ... [a] converted wetland if the conversion of the wetland was commenced before December 23, 1985." 16 U.S.C. § 3822(b)(1)(A); *Gunn,* 118 F.3d at 1238. Wetlands that were converted to production of agricultural commodities *before* the cutoff date of December 23, 1985, "can continue to be farmed without the loss of benefits, but only so long as. the previously accomplished drainage or manipulation is not significantly improved upon, so that wetland characteristics are further degraded in a significant way." *Gunn,* 118 F.3d at 1238; *see also Barthel,* 181 F.3d at 939 (quoting *Gunn* ). Thus, in *Barthel,* the Eighth Circuit Court of Appeals reversed the USDA's determination that a farmer's improvements to a pre-December 23, 1985, drainage system exceeded the physical specifications of the original system, instead remanding to the agency "for a hearing and determination *of the wetland characteristics and associated use* of the [farmland] prior to December 23, 1985, *and the necessary dredging and cleaning of the ditch to accomplish that water and farming regime.*" *Barthel,* 181 F.3d at 939 (emphasis added). Similarly, here, the question is whether the Branstads' repair of the tile drainage system on Tract # 2024 was in excess of the requirements to accomplish the water and farming regime as it existed prior to December 23, 1985.

■ The court concludes that, in this "case's particular circumstances ... the balance of equities so favors the movant that justice requires the court to intervene

to preserve the status quo until the merits are determined," *United Indus. Corp.*, 140 F.3d at 1179, and that the Branstads have found support for their position in governing law making their success on the merits "at least ... sufficiently likely to support the kind of relief [they] reques[t]." *Youngblade*, 878 F.Supp. at 1247 (citations omitted). First, the USDA both authorized and inspected the drainage system repairs, which is sufficient indication for preliminary purposes that the Branstads' repairs did not exceed the permissible scope and effect of the drainage system under the Swampbuster Act, *see Barthel*, 181 F.3d at 939; *Gunn*, 118 F.3d at 1238 (wetlands that were converted to production of agricultural commodities *before* the cutoff date of December 23, 1985, "can continue to be farmed without the loss of benefits, but only so long as the previously accomplished drainage or manipulation is not significantly improved upon, so that wetland characteristics are further degraded in a significant way"), and that the USDA's determination otherwise is arbitrary and capricious. Second, there is sufficient evidence in the administrative record to suggest that the process whereby the USDA determined "scope and effect" was not in compliance with USDA regulations, and thus, was arbitrary and capricious. *See, e.g.*, Hearing Officer's Appeal Determination, at 4–5, 6–7 (describing the USDA's determination, *inter alia*, as implying a "backward approach" to derive the wetland determination). Third, governing law indicates that the Branstads were entitled to an on-site determination of wetlands before such a determination becomes binding, 16 U.S.C. § 3822(a)(4); 7 C.F.R. § 12.6(c)(9), and that a participant may obtain a review of any wetland determination upon a denial of benefits. 7 C.F.R. § 12.30(c)(4); 7 C.F.R. § 12.12. Thus, the conclusion in the "final" agency determination of July 17, 2000, that the 1987 and 1991 wetland determinations were unappealable was, at least colorably, arbitrary and capricious. Finally, the Acting Director's conclusion that the parties'

entry into the Wetland Restoration Agreement somehow mooted the entire dispute was colorably, if not clearly, arbitrary and capricious, in light of record evidence that the NRCS had agreed that "until further notice the June 1st date [for compliance with the Wetland Restoration Agreement] ha[d] been suspended pending the final decision of the NAD appeal." FSA Deadline Extension. There could be no definitive determination of what, if anything, had to be restored when it wasn't clear what conditions existed on the property before December 23, 1985. Contrary to the Secretary's assertion, the court finds no "concession" that the Branstads had "converted" wetlands in the Wetland Restoration Agreement. Although the Agreement provides for the restoration of the tract "to its pre-existing conditions," and recognizes that "[t]his site was previously labeled as a 'W' wetland," there is no concession that the prior conditions were, in fact, that protected "wetlands" existed or that the prior "wetland" designation was correct. *See* Wetland Restoration Agreement.

Therefore, the court concludes that this factor weighs in favor of the issuance of a preliminary injunction.

### 2. *Irreparable harm*

" 'The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.' " *Bandag, Inc.*, 190 F.3d at 926 (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). "Thus, to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm." *Id.; Adam–Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir.1996) (" '[T]he failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction.' ") (quoting *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987)). Various considerations may be relevant to a determination of "irreparable

harm." For example, a movant's delay in seeking relief or objecting to the actions the movant seeks to enjoin "belies any claim of irreparable injury pending trial." *Hubbard Feeds*, 182 F.3d at 603. Moreover, an adequate showing of "irreparable harm" cannot be something that has never been the focus of the underlying lawsuit. *See United States v. Green Acres Enters., Inc.*, 86 F.3d 130, 133 (8th Cir.1996). A sufficient showing on this factor can be made, for example, by showing that the movant has no adequate remedy at law. *Baker Elec. Co-op.*, 28 F.3d at 1473. Conversely, where the movant has an adequate legal remedy, a preliminary injunction will not issue. *See Frank B. Hall & Co. v. Alexander & Alexander, Inc.*, 974 F.2d 1020, 1025 (8th Cir.1992). Even where money damages are available to compensate for some of the harm to the movant, other less tangible injuries cannot be so easily valued or compensated, so that the availability of money damages that do not fully compensate the movant do not preclude a preliminary injunction. *Glenwood Bridge*, 940 F.2d at 371–72.

Here, the relief the Branstads seek in their motion for a "temporary injunction" involves precisely the same focus as their underlying lawsuit, *see Green Acres Enters., Inc.*, 86 F.3d at 133, relief from a determination that they improperly converted wetlands and relief from the enforcement action flowing from that determination. *Compare* Complaint, ¶ 37–46 & Prayer, ¶ A; *with* Motion For Temporary Injunction. Moreover, the Branstads have shown that legal remedies would be entirely insufficient to recompense them for the damage inflicted by improper USDA enforcement action. *See Bandag, Inc.*, 190 F.3d at 926; *Baker Elec. Co-op.*, 28 F.3d at 1473. Even assuming the Branstads could be recompensed for being forced to disgorge farm benefit program payments already received and for daily fines for noncompliance with the Wetland Restoration Agreement that might be imposed, they cannot be fully compensated by damages for the loss of the intangible value of their farming operation and the intangible costs of their likely bankruptcy as a result of such disgorgement and fines. *See Glenwood Bridge*, 940 F.2d at 371–72. Moreover, permitting enforcement action to proceed now would deprive the Branstads of the benefits of the opportunity to complete the Wetland Restoration Agreement, even if the court determines that the agency's decision that wetlands were improperly converted is sustained in this action, and hence would deprive them of the opportunity, under governing law, to obtain reinstatement of benefits and to continue their farming operation. FSA Decision at 1 (notifying the Branstads of the legal effect of restoration on reinstatement of benefits); Wetland Restoration Agreement (providing that compliance with the agreement entitles the Branstads to a "good faith exemption"). Finally, the court concludes that, unless enforcement is enjoined, the Branstads face the threat of irreparable harm in the loss of the value of their right to judicial review of the USDA's "final" decision.

Thus, this factor also weighs strongly in favor of granting the preliminary injunctive relief sought by the Branstads.

### 3. Balance of harms

The next factor in the *Dataphase* analysis, the "balance of harms," requires the court to consider "the balance between the harm [to the movant] and the injury that the injunction's issuance would inflict on other interested parties, and the public interest." *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 929 (8th Cir.1994). Whereas "irreparable harm" focuses on the harm or potential harm to the plaintiff of the defendant's conduct or threatened conduct, *Dataphase*, 640 F.2d at 114, the "balance of harm" analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public, as well. *Id.; see also Glenwood Bridge*, 940

F.2d at 372. Thus, an illusory harm to the movant will not outweigh any actual harm to the nonmovant. *Frank B. Hall,* 974 F.2d at 1023. What must be weighed is the threat to each of the parties' rights and economic interests that would result from either granting or denying the preliminary injunction. *See Baker Elec. Co-op.,* 28 F.3d at 1473. Another consideration is whether the nonmovant has already voluntarily taken remedial action, which either eliminated or reduced the harm to the movant, or showed that such remedial action did not harm the nonmovant. *See Heather K.,* 887 F.Supp. at 1260.

The Branstads argue that, while there is a serious threat of irreparable harm to them, there is no threat of any countervailing harm to the USDA, because any wetlands have already been converted. This argument is not entirely persuasive, because, if the Branstads' repairs of the tile drainage system actually converted more wetlands than the original tile drainage system converted, there is a continuing harm to the USDA from the loss of those additional wetlands. However, the obligation the Branstads have undertaken, in the "good faith" Wetland Restoration Agreement, to restore any improperly converted wetlands, if this judicial review action ultimately goes against them, considerably ameliorates the potential for long term harm to wetlands, particularly when balanced against the almost certain and permanent disaster that loss of farm program benefits will be to the Branstads. *See Baker Elec. Co-op.,* 28 F.3d at 1473 (the "balance of harms" involves consideration of the rights and economic interests of the parties). It is also true that the preliminary injunction would only maintain the *status quo* as it existed during the administrative appeals and the Branstads should not be effectively deprived of their right to judicial review. *See* 5 U.S.C. § 705 (the court "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings"); *cf. United*

*Indus. Corp.,* 140 F.3d at 1179 (stating, in the context of the "likelihood of success" factor, that "a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined").

Thus, the factor also weight in favor of granting a preliminary injunction.

### 4. The public interest

Finally, the court turns to the "public interest" factor in the *"Dataphase* analysis." *Entergy, Ark., Inc.,* 210 F.3d at 898; *Bandag, Inc.,* 190 F.3d at 926; *Iowa Right to Life Committee, Inc.,* 187 F.3d at 966. This court has observed that consideration of the "public interest" factor has frequently invited courts to indulge in broad observations about conduct that is generally recognizable as costly or injurious. *See Heather K.,* 887 F.Supp. at 1260. However, there are more concrete considerations, such as reference to the purposes and interests any underlying legislation was intended to serve, *see id.,* a preference for enjoining inequitable conduct, *see id.* at 1260 n. 16, and the "public's interest in minimizing unnecessary costs" to be met from public coffers. *Baker Elec. Co-op.,* 28 F.3d at 1474.

Here, guidance comes first from the purpose of the Swampbuster Act. In *Barthel,* the Eighth Circuit Court of Appeals noted that the government had emphasized that " '[w]etlands are a priceless resource whose contributions have long gone unrecognized.' " *Barthel,* 181 F.3d at 937 (quoting H.R.Rep. No. 99–271, pt. 1, at 86 (1985), *reprinted in* 1985 U.S.C.C.A.N. 1103, 1190). Thus, restoration of wetlands is certainly in the public interest. Similarly, there would be a public interest in not continuing farm program benefits, which are drawn from the public coffers, to persons who have improperly converted such a priceless resource as wetlands to their own business advantage. *See Baker Elec.*

*Co-op.,* 28 F.3d at 1474 (identifying the interest of the public in avoiding unnecessary expenditures from the public coffers). Nevertheless, there is also a public interest in the proper application of the Swampbuster Act, which weighs in favor of an injunction on enforcement actions under the Act in this particular case until such time as this court determines whether the Act has been correctly applied by the USDA and violated by the Branstads.

### E. Rule 65's Bond Requirement

Because the court finds that it is proper, upon balancing the *"Dataphase* factors" in the circumstances presented here, to issue a preliminary injunction, the court turns to the question of security for its issuance. Rule 65(c) provides, in pertinent part, as follows:

> **(c) Security.** No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.

FED.R.CIV.P. 65(c). The bond posted under Rule 65(c) "is a security device, not a limit on the damages the [USDA] defendants may obtain against [the Branstads] if the facts warrant such an award." *Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc.,* 130 F.3d 1305, 1309 (8th Cir.1997). The Eighth Circuit Court of Appeals has warned that, "[a]lthough we allow the district court much discretion in setting bond, we will reverse its order if it abuses that discretion due to some improper purpose, or otherwise fails to require an adequate bond or to make the necessary findings in support of its determinations." *Hill v. Xyquad, Inc.,* 939 F.2d 627, 632 (8th Cir.1991) (citing *Rathmann Group v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989)).

In this case, the Branstads' counsel represented that they were prepared to satisfy this bond requirement, but neither party argued the appropriate amount for such a bond. The Branstads represented that the USDA was threatening to impose penalties of $25,000 per day for each day after September 30, 2000, that the Branstads had not complied with the Wetland Restoration Plan. It is not clear whether this penalty is a specified amount per day or only a maximum possible penalty per day, as the court can find no exhibit in the present record, nor any statute or regulation, containing any specification of penalties for non-compliance with the Wetland Restoration Agreement. The Branstads' counsel also represented that it would take approximately 72 hours for the Branstads to comply with the Wetland Restoration Plan, once they received notice of a judicial determination against them on their action for judicial review. The court assumes that estimate depends, at least in part, on weather conditions permitting the necessary work of "breaking" drainage lines in the tile drainage system, as required in the Wetland Restoration Plan. The court notes further that, in light of the parties' agreement to the Wetland Restoration Agreement, the USDA agreed to waive all assessments for farm benefits once the Branstads complete restoration of converted wetland. *See* Hearing Officer's Appeal Determination, at 1.

▮ The court concludes that, in light of these representations, the extent to which the USDA may incur "costs and damages" as the result of being "wrongfully enjoined or restrained," *see* FED.R.CIV.P. 65(c), in this case is the total of daily penalties for non-compliance with the Wetland Restoration Agreement for a period of three days, the time the Branstads have represented it will take them to comply with the Agreement. Even if the USDA ultimately prevails in this action, the USDA has waived assessments to the Branstads' farm program benefits (which total over $400,000) if the Branstads com-

plete the required restoration, so that the USDA cannot reasonably assert that a bond should encompass such assessments.[6] The court will also assume, in the absence of any evidence to the contrary, that the penalty per day for non-compliance with the Wetland Restoration Agreement is a *maximum* of $25,000, not a mandatory penalty of $25,000. In the court's view, a reasonable penalty for non-compliance with the Wetland Restoration Agreement in the circumstances of this case, even if the USDA ultimately prevails, would not exceed $1,000 per day, and no such penalty could reasonably begin to accrue until this court's preliminary injunction is set aside. Therefore, the court will impose a bond requirement, in accordance with Rule 65(c), in the amount of $3,000, before the preliminary injunction will issue.

### III. CONCLUSION

The court concludes that it has subject matter jurisdiction over the present matter and over the Branstads' request for a preliminary injunction pursuant to 28 U.S.C. § 1331 and the waiver of sovereign immunity to injunctive relief in the Administrative Procedures Act (APA), 5 U.S.C. § 702. Section 705 of the APA provides the authority for a court reviewing administrative actions to issue a stay of agency action, including enforcement actions subsequent to a "final" agency decision, and such a stay is, in all respects, comparable to a preliminary injunction, and no pertinent statute prohibits that relief in this case. Upon consideration of the *"Dataphase* factors" applicable to the determination of whether a preliminary injunction should issue, the court concludes that the balance weighs very heavily in favor of granting the Branstads' motion for a preliminary injunction. Finally, the court finds that a bond in the amount of $3,000 is appropriate security for the USDA against the improvident grant of such a preliminary injunction in this case.

Therefore, the Branstads' September 18, 2000, motion for a "temporary injunction" is **granted.** A preliminary injunction shall issue in accordance with 5 U.S.C. § 705, Rule 65 of the Federal Rules of Civil Procedure, and this order.

**IT IS SO ORDERED.**

---

6. On the other hand, the threat of harm to the Branstads also includes the loss of *future* farm program benefits, even if they will not lose any *past* benefits.