Franz **PENNER**; Merle **Doughty**;
Howard **Pehle**; Gary **Kesler**,
Plaintiffs–Appellants,

v.

Edward **MADIGAN**, Secretary of the United States Department of Agriculture; Morris Westfall, Defendants–Appellees.

No. 91–2760.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1992.

Decided Sept. 9, 1992.

Dale Reesman, Boonville, Mo., argued, for plaintiffs-appellants.

Alleen Castellani, Kansas City, Mo., argued (Jean Paul Bradshaw II and Alleen S.

Castellani, on brief), for defendants-appellees.

Before LOKEN, Circuit Judge, BRIGHT, Senior Circuit Judge, and HANSEN, Circuit Judge.

LOKEN, Circuit Judge.

United States Department of Agriculture (USDA) diversion and deficiency payments to farmers—payments made for not growing certain crops—are calculated by multiplying the number of eligible acres by the "farm program payment yield" per acre. In this action, four Missouri farmers claim that the Secretary of Agriculture and the Missouri State Executive Director of the Agricultural Stabilization and Conservation Service (ASCS), a USDA agency, have unlawfully refused to establish separate program payment yields for irrigated Missouri crop lands. The district court[1] dismissed the case on defendants' motion, concluding that it lacked jurisdiction to grant plaintiffs the equitable relief they seek and that plaintiffs failed to exhaust their administrative remedies. Plaintiffs appeal those rulings. We affirm.

## I.

Prior to the 1986 crop year, the program payment yield for each commodity was either a farmer's "established yield," an estimate determined annually for each farm by an ASCS county committee, or the farmer's "proven yield," determined from the farm's average actual yields in the previous five years. A farmer dissatisfied with the proposed established yield could provide ASCS with data establishing the proven yield. See 7 C.F.R. § 713.6 (1986). Alternatively, he or she could appeal the proposed established yield administratively, first to the ASCS state committee and then to the ASCS Deputy Administrator for State and County Operations. See 7 C.F.R. §§ 780.4, 780.5.

In determining established yields in Missouri during the 1981–1985 period, ASCS did not calculate separate irrigated and non-irrigated yields, as it did in at least seven other States.[2] Irrigation yields are generally higher (sometimes much higher) within a farming locale. Thus, during the 1981–1985 period, in States where irrigated yields were separately determined, farmers who irrigated received higher established yields per acre, which usually meant higher diversion and deficiency program payments.

Plaintiffs have irrigated their Missouri crop lands since at least 1980. In each of the years 1981–1985, ASCS assigned plaintiffs established yields that were the same as those assigned their neighbors who did not irrigate, consistent with the agency's policy of not separately determining irrigated yields in Missouri. Plaintiffs neither appealed these established yields to the Deputy Administrator nor established their proven yields. Thus, these established yields became plaintiffs' program payment yields that governed any diversion or deficiency payments they received in those years.

Section 1031 of the Food Security Act of 1985[3] froze program payment yields for 1986 and 1987 at levels determined by the yields from 1981 through 1985, and gave the Secretary authority, which he subsequently exercised, to extend the freeze through 1990:

(b)(1) [T]he farm program payment yield for each of the 1986 and 1987 crop years shall be the average of the farm program payment yields for the farm for

---

1. The Honorable D. BROOK BARTLETT, United States District Judge for the Western District of Missouri.

2. ASCS explains that this decision was based upon its conclusion that separate irrigated yields are only appropriate for dry land farming areas where irrigation is a normal and continuing farming practice and yields are substantially increased due to irrigation. Missouri did not qualify for separate irrigated yields under this standard because irrigation practices in Missouri are "supplemental" rather than required. Plaintiffs contend that this was an arbitrary and capricious interpretation of the statute and implementing regulations and violated their due process and equal protection rights. The merits of the issue are not before us.

3. Pub.L. 99–198, Tit. X, § 1031, 99 Stat. 1463, codified at 7 U.S.C. § 1466(b) (1988).

the 1981 through 1985 crop years, excluding the year in which such yield was the highest and the year in which such yield was the lowest.

*   *   *   *   *   *

(c) With respect to the 1988 and subsequent crop years, the Secretary may (A) establish the farm program payment yield as provided in subsection (b) of this section. . . .

7 U.S.C. §§ 1466(b)(1), (c) (1988).[4] On the face of the statute, the freeze is absolute. There is no provision in the 1985 Act that permits farmers to establish proven yields as an alternative to the freeze-established yields. There is also no provision allowing farmers to increase the freeze-established yield by challenging a program payment yield previously established for the 1981–1985 period.

Nonetheless, plaintiffs commenced this action in 1987 alleging that ASCS's refusal to establish separate irrigated yields in Missouri since 1980 is unlawful. Plaintiffs initially sought injunctive relief. Defendants moved to dismiss on the ground that the diversion and deficiency payment programs are conducted by the Commodity Credit Corporation (CCC), a separately chartered entity within USDA, and 15 U.S.C. § 714b(c) prohibits the issuance of any injunction against CCC or its property. Plaintiffs then filed a second amended complaint seeking only declaratory relief. After proving through discovery that no plaintiff appealed any established yield determination to the Deputy Administrator except Franz Penner with respect to the 1986 crop year, defendants renewed their motion to dismiss.

The district court dismissed all of plaintiffs' claims. First, it held that the CCC anti-injunction statute bars all claims even though CCC was not a named defendant and the plaintiffs sought only declaratory relief. Second, it held that plaintiffs' claims are barred by their failure to exhaust ASCS administrative remedies. Those plaintiffs who did not appeal were barred even if, as they alleged, local ASCS officials had advised them that administrative appeals would be futile. With respect to Franz Penner's claim for the 1986 crop year, which he did administratively appeal, our decision in *Madsen v. USDA*, 866 F.2d 1035 (8th Cir.1989), precludes Penner from raising any issue other than the application of the statutory formula used to calculate his 1986 yield, an issue he failed to raise in the administrative appeal. Plaintiffs appeal these jurisdictional rulings.

II.

(1) Plaintiffs' program payment yields for 1981–1985 are administratively final. *See* 7 U.S.C. § 1385 ("Finality of payments"); 7 C.F.R. Part 780 ("Appeal Regulations"). Because of the statutory freeze, plaintiffs' theory in this case—that the Secretary must establish their 1986–1990 program payment yields using separate irrigated yields—necessarily involves a collateral attack on the 1981–1985 program payment yields, which are the base yields under the freeze formula. As we held in *Madsen*, such a collateral attack would be inconsistent with the 1985 Act.

The statute provides that plaintiffs' program payment yields for the 1986–1990 crop years "shall be" the average of the farm program payment yields for the crop years from 1981 through 1985, excluding the years in which the yield was the highest and the lowest.[5] 7 U.S.C. § 1466(b)(1). The implementing regulations provide, "With respect to farm program payment yields, determinations made before December 23, 1985 are not appealable." 7 C.F.R. § 1413.155(b) (1991). In adopting this regulation, the Secretary explained:

(e) The 1985 Act provided no authority to change or adjust yields established for the 1985 or previous crop years.

---

**4.** Congress significantly changed the law again for the 1991–1995 crop years. Pub.L. 101–624, Title XI, § 1101, 104 Stat. 3495, amending 7 U.S.C. § 1465. This new statute is not at issue.

**5.** The statute makes this method of determining program payment yields mandatory for 1986 and 1987. Plaintiffs do not challenge the Secretary's election pursuant to § 1466(c) to use this method for 1988–1990 as well.

52 Fed.Reg. 10,727 (1987); *see also* 51 Fed. Reg. 39,481 (1986). This is a correct interpretation of the 1985 Act. Therefore, neither the Secretary nor a reviewing court has authority under this statute to modify the congressionally mandated freeze by reopening program payment yields established for the 1981–1985 base period.

Because the 1985 Act, its implementing regulations, and our prior decision in *Madsen* preclude plaintiffs from collaterally attacking their 1981–1985 program payment yields, the only open issue for the 1986 through 1990 crop years is whether the Secretary properly calculated and applied the freeze formula in determining their program payments. No plaintiff challenged the Secretary's application of the freeze formula in an administrative appeal. That is precisely the kind of fact issue best considered initially in the administrative appeal process. Therefore, the district court did not abuse its discretion in dismissing plaintiffs' claims for failure to exhaust administrative remedies. *See United States v. Bisson*, 839 F.2d 418, 420 (8th Cir.1988).

(2) Having concluded that plaintiffs' claims were properly dismissed for failure to exhaust administrative remedies, we do not reach the difficult issue whether the CCC anti-injunction statute bars their claims for declaratory relief. *Compare Hall v. Lyng*, 828 F.2d 428 (8th Cir.1987), *with Expedient Serv., Inc. v. Weaver*, 614 F.2d 56 (5th Cir.1980).

▪ (3) Finally, given our rejection of plaintiffs' appeal on the merits, we note but need not decide a serious jurisdictional issue. Plaintiffs' notices of appeal are captioned "Franz Penner, et al. v. Edward Madigan, et al.," and state that "all of the plaintiffs hereby appeal." In *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Supreme Court held that "et al." is insufficient to confer appellate jurisdiction over parties not specifically named in the notice of appeal. Though the effect can be harsh, we have "accepted the teaching of *Torres* without shrinking from its full implications." *United States v. Schneider*, 926 F.2d 777, 778 (8th Cir.1991).

Applying *Torres*, we recently held that we have jurisdiction over additional appellants named in an Appeal Information Form filed with the notice of appeal. *See Good Samaritan Hosp. v. Sullivan*, 952 F.2d 1017, 1022 (8th Cir.1991). But in this case, it appears that plaintiffs other than Penner were named only in a Certificate of Interested Persons. Such issues have divided other circuits, *see, e.g., Storage Tech. Corp. v. United States Dist. Ct.*, 934 F.2d 244 (10th Cir.1991); *Baylis v. Marriott Corp.*, 906 F.2d 874 (2d Cir.1990), and we express no view as to whether any plaintiff other than Penner has properly appealed in this case. We again caution counsel for multiple parties who wish to appeal from a district court order or judgment that naming each appealing party in the notice of appeal is the only way to guarantee that we have jurisdiction over all of them under *Torres*.

We have considered plaintiffs' other arguments on appeal and conclude they are without merit. Accordingly, the order of the district court dismissing their second amended complaint is affirmed.