Edward A. **BRANSTAD**, and Monroe Branstad, Plaintiffs,

v.

Ann **VENEMAN**, Secretary of the United States Department of Agriculture, Defendant.

No. C 01–3030–MWB.

United States District Court, N.D. Iowa, Central Division.

June 4, 2001.

Thomas A. Lawler, Lawler & Swanson, P.L.C., Parkersburg, IA, for Plaintiffs.

Kandice A. Wilcox, Assistant U.S. Attorney, Cedar Rapids, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

BENNETT, Chief Judge.

### TABLE OF CONTENTS

*I.* *INTRODUCTION* ................................................. 1013

*II.* *LEGAL ANALYSIS* ............................................. 1016
   *A.* *Issues Presented For Review* ........................................ 1016
   *B.* *Subject Matter Jurisdiction* ......................................... 1017
      *1.* *Exhaustion of administrative appeals* ............................. 1018
      *2.* *Violation of the CCC's anti-injunction protections* ................... 1021
   *C.* *Injunctive Relief* .................................................. 1022
      *1.* *Likelihood of success on the merits* ............................... 1023
      *2.* *Irreparable harm* ............................................... 1024
      *3.* *Balance of harms and public interest* ............................. 1024
   *D.* *Rule 65's Bond Requirement* ........................................ 1025

*III.* *CONCLUSION* ................................................. 1025

Much as in a prior case for judicial review and injunctive relief brought by these plaintiffs, *Branstad v. Glickman*, 118 F.Supp.2d 925 (N.D.Iowa 2000) (*Branstad I*), one of the questions presented here is whether or not the plaintiff farmers are entitled to preliminary injunctive relief from enforcement actions by the USDA for violation of the "Swampbuster" Act while they pursue judicial review of an administrative determination that they improperly "converted" "wetlands" by repairing a tile drainage system on their farmland. However, a different—indeed, preliminary and potentially dispositive—question presented in the present action is whether or not the USDA's enforcement action should be overturned, because the USDA allegedly arbitrarily refused to consider the plaintiffs' administrative appeal on the ground that it was untimely, when the plaintiffs asserted "extenuating circumstances" on the basis that their timely notice of appeal had been lost in the mail.

### I. INTRODUCTION

The present action involves the *same* tile drainage system as was at issue in *Bran-*

*stad v. Glickman,* 118 F.Supp.2d 925 (N.D.Iowa 2000) (*Branstad I*), but the question in the administrative action in this case was the effect of that tile drainage system on a *different,* albeit adjacent, tract of farm land, tract # 1475, whereas *Branstad I* involved tract # 2024. In *Branstad I,* the court provided extensive background on the "Swampbuster" Act to put in context the dispute between the parties. Suffice it to say here that Congress enacted the Food Security Act of 1985 §§ 1201, 1221–23, 16 U.S.C. §§ 3801, 3821–24, commonly known as "Swampbuster," " '[i]n order to combat the disappearance of wetlands through their conversion into crop lands.' " *Barthel v. USDA,* 181 F.3d 934, 936 (8th Cir.1999) (quoting *Gunn v. USDA,* 118 F.3d 1233, 1235 (8th Cir. 1997), *cert. denied,* 522 U.S. 1111, 118 S.Ct. 1042, 140 L.Ed.2d 108 (1998)). "The law denies eligibility for several federal farm-assistance programs if wetlands are converted to agricultural use." *Id.* (citing *National Wildlife Fed'n v. Agricultural Stabilization and Conservation Serv.,* 955 F.2d 1199, 1200 (8th Cir.1992)). However, the law also provides exemptions for "wetlands" that were "converted" before December 23, 1985—the effective date of the law. *Id.* Specifically, "[l]and meeting this exemption can be maintained as it was prior to the effective date of the Act without loss of federal benefits." *Id.*

In the present action, as in *Branstad I,* the USDA commenced administrative action against the Branstads based on a "whistleblower" complaint that repairs to a tile drainage system that had been authorized, inspected, and approved by the USDA had nevertheless improperly "converted" "wetlands." The USDA contends in the present action that the request for and grant of permission to repair the tile drainage system pertained only to tract # 2024, the one at issue in *Branstad I,* not to tract # 1475, the tract now at issue, even though it is the *same* tile drainage system, not a separate drainage system for a separately designated tract of land.

During the administrative proceedings, on September 27, 2000, the Branstads entered into a "Wetland Restoration Agreement: Good Faith Restoration" as to tract # 1475, with a deadline for compliance of December 1, 2000. They have not, however, completed the restoration provided for in that agreement. In the administrative action pertaining to tract # 1475, as in the action concerning tract # 2024, the USDA determined, at the lower levels of the administrative process, that the Branstads had improperly "converted" "wetlands." The Branstads were notified of that adverse administrative decision by letter decision dated November 2, 2000. They were also notified in that letter that they had thirty days to appeal the administrative decision to the next administrative level, the National Appeals Division (NAD). Assuming seven days for mailing, the Branstads' deadline for requesting such an appeal was December 9, 2000.

The Branstads maintain that their counsel requested an appeal by mailing such a request by ordinary mail on December 2, 2000. On December 1, 2000, counsel also mailed to the NAD copies of Authorizations for Representation of the Branstads in the appeal and, on December 13, 2000, mailed to the District Conservationist a request for an extension of the "Wetland Restoration Agreement: Good Faith Restoration" as to tract # 1475 pending disposition of the administrative appeal. However, the NAD has no record of receiving the Branstads' December 2, 2000, appeal request.

When counsel discovered that the appeal request had not been received, he filed a second request for appeal, postmarked January 12, 2001, which was received by the NAD on January 16, 2001. However, the NAD denied the January 12, 2001, request for appeal as untimely by letter

dated January 29, 2001. The denial of appeal included the following information:

> In accordance with the preamble to NAD Final Rule set forth at Federal Register Vol. 64, No. 120, page 33369.[Sic] If there are extenuating circumstances, you may request a review of this determination within 15 days of the date of this notice by the Director of the National Appeals Division.

Plaintiffs' Motion For Preliminary Injunction, Attachment "H" (January 29, 2001, NAD denial of appeal), p. 1.

The Branstads then attempted to obtain reversal of the denial of their appeal as untimely on the basis of "extenuating circumstances." On February 1, 2001, counsel for the Branstads sent a letter to the NAD explaining his attempts to file a timely appeal and his belief that the December 2, 2000, mailing of his request for an appeal "[a]pparently ... has been lost in the U.S. mail system." Plaintiffs' Motion For Preliminary Injunction, Attachment "I" (February 1, 2001, request that appeal be allowed based on "extenuating circumstances"), p. 2.[1] In that letter, the

1. The body of counsel's February 1, 2001, letter consisted of the following:

> By letter dated January 29, 2001, postmarked January 29, 2001, and received by me on February 1, 2001, Natalie J. German, *Deputy Assistant Director*, advised me that, as to NAD No.2001E000535 concerning Edward Branstad, the appeal request did not meet the requirements of 7 C.F.R. § Part 11.6(b)(1)(2) because Mr. Branstad did not personally sign a specific request for an appeal within the time limit established by the regulations. Because of this the request for an appeal was denied. This is a request for the Director of the National Appeals Division to review this determination because of extenuating circumstances. Mr. Branstad did personally sign a specific request for an appeal. This request is dated November 9, 2000. Mr. Branstad did not mail the request on November 9, 2000, because he wanted to complete an Authorization for Representation and Release of Information prior to sending the request. He had originally prepared this Authorization designating Thomas A. Lawler, Amy K. Swanson and David Phillips. Soon after, *Mr. Phillips went into government service* so that he could not represent Mr. Branstad in this USDA matter. Mr. Branstad then prepared a new Authorization granted only to Thomas A. Lawler and Amy K. Swanson. On December 2, 2000 Mr. Branstad's request for appeal was mailed to the eastern regional office of NAD. When Mr. Branstad received no acknowledgement of his request he sent another copy of the request to the eastern regional office explaining the previous mailing. The eastern regional of-

> fice requested additional verification on the December 2, 2000 mailing.
> By letter dated January 23, 2001, and received by the eastern regional office January 25, 2001 I supplied information verifying the December 2, 2000 mailing. I include a copy of that letter. The request for appeal was mailed on December 2, 2000. I remember this because a member of my staff told me on Monday, December 4, 2000 that this staff person had forgotten to mail the request on Friday, December 1, 2000 and so she drove to the Waterloo, IA post office on Saturday, December 2, 2000 to mail the request. She also on that day mailed to James R. Holman, Hearing Officer for USDA NAD in Iowa the Authorization for Representation.
> We have never received back from the post office the request for appeal nor the letter sent to Mr. Holman. The eastern regional office has no record of receiving the appeal until I sent another copy on January 12, 2001. Apparently the request for appeal has been lost in the U.S. mail system.
> We would not have sent the Authorization to Mr. Holman if a request for appeal had not been signed and mailed. We also sent a letter to the District Conservationist on December 13, 2000 stating that an appeal had been filed. That representation would not have been made if the appeal had not been filed. The agency should be able to verify with Mr. Holman and the District Conservationist that the letters sent to them were received by them.
> Mr. Branstad asserts that having his request for appeal lost in the United States Postal System is an extenuating circum-

Branstads also asserted "that having [Edward Branstad's] request for appeal lost in the United States Postal System is an extenuating circumstance and that Edward Branstad's request for appeal should be allowed by NAD." *Id.*

The NAD replied to the Branstads' February 1, 2001, request that their administrative appeal be allowed by letter from Assistant Director William A. Crutchfield, Sr., dated February 13, 2001. The letter from Assistant Director Crutchfield states, in pertinent part, the following:

The Director, National Appeals Division, considered your letter of February 1, 2001. Unfortunately, the circumstances you raise do not establish good cause to relieve Mr. Branstad from the requirement of our rules. It is reasonable that a representative seeking to file appeals would check such for filing requirements, and as the appeal in this instance does not conform to our requirements, it cannot be accepted.

An attorney is ordinarily responsible for knowing published requirements pertaining to the matters for which he or she undertakes a representative role. Our regulations at 7 C.F.R. § Section 11.6(b)(1)(2) are published in the Federal Register at Vo. 64, No. 120, Wednesday, June 23, 1999/Rules and Regulations, and provide that an appeal request "be not later than 30 days after the date on which the participant first received notice of the adverse decision . . ." and "shall be in writing and personally signed by the participant . . ."

Plaintiffs' Motion For Preliminary Injunction, Attachment "J", p. 1. The remainder of the letter is "boilerplate" language concerning USDA prohibitions on discrimination and means for filing a complaint of discrimination. *Id.* at pp. 1–2.

The Branstads filed the present action for judicial review on March 19, 2001, and the Secretary has been given until July 30, 2001, to file an answer. On May 9, 2001, the Branstads also filed the present Motion For Preliminary Injunction, which the Secretary resisted on May 21, 2001. The court heard oral arguments on the Branstads' motion for preliminary injunction on May 29, 2001. At those oral arguments, plaintiffs Edward A. Branstad and Monroe Branstad were represented by Thomas A. Lawler of Lawler & Swanson, P.L.C., in Parkersburg, Iowa. The Secretary was represented by Assistant United States Attorney Kandice A. Wilcox in Cedar Rapids, Iowa. The motion for preliminary injunction is therefore fully submitted.

## II. LEGAL ANALYSIS

### A. Issues Presented For Review

The first question the court must resolve is whether review of the USDA's refusal to hear the Branstads' administrative appeal is before the court on judicial review. At oral arguments, the Secretary contended that the USDA's refusal to hear the Branstads' appeal was not properly before the court, because the Branstads' Complaint for judicial review only sought judicial review of the USDA's November 2, 2000, final administrative decision, that is, the agency determination that the Branstads had "converted" "wetlands" on tract # 1475. The court does not agree.

First, the Secretary's contention is contrary to the language used by the Branstads in the formulation of their Complaint

___

stance and that Edward Branstad's request for appeal should be allowed by NAD. If you want any additional information please that [sic] me know. Thank you for your consideration of this matter.

Plaintiffs' Motion For Preliminary Injunction, Attachment "I."

for judicial review. The Branstads described their action as "an action for judicial review of a final agency decision made November 2, 2000, on Defendant's behalf, by Clifton D. Hill, County Executive Director, Winnebago County, Iowa, *and the Agency's denial of appeal.*" Complaint, ¶ 1 (emphasis added). The relief outlined in this paragraph of the Complaint includes declaratory judgment that the USDA's determination "was made without observance of procedure required by law." *Id.* In the Complaint, the Branstads also alleged the facts concerning their attempts to file a timely administrative appeal, denial of their appeal, and denial of their request for review based on "extenuating circumstances." *See id.* at ¶ 36. The Branstads' request for declaratory judgment in the Complaint also requests a declaration that "Plaintiff Edward Branstad furnished adequate showing that he made a good faith effort to appeal to NAD and his appeal should have been allowed." *Id.* at ¶ 40.D. The Demand for Judgment and Injunction in the Complaint includes a demand for a declaration that the USDA's action "was without observance of procedure required by law." *Id.* at Demand for Judgment and Injunction, ¶ A. Finally, this portion of the Complaint seeks "remand [of] this case to the Defendant with instructions that the Defendant take such further action as is consistent with the ruling and judgment of this Court." *Id.* at ¶ B. Thus, it is abundantly clear from the Complaint that the Branstads are seeking judicial review of the USDA's refusal to hear their appeal based on "extenuating circumstances."

▮ Moreover, the court concludes that the denial of the Branstads' request for review based on "extenuating circumstances" is reviewable in these proceedings. First, the court concludes that the denial of appeal based on "extenuating circumstances" was a reviewable "final determination," pursuant to 7 C.F.R. § 11.13(a)

("A final determination of the Division shall be reviewable and enforceable by any United States District Court of competent jurisdiction in accordance with chapter 7 of title 5, United States Code."), because the Director's denial of appeal based on "extenuating circumstances" was the final adverse decision of the agency available from the NAD, pursuant to its procedures, on the Branstads' attempt to pursue administrative appeals. *See* 7 C.F.R. § 11.13(b) ("An appellant may not seek judicial review of any agency adverse decision appealable under this part without receiving a final determination from the Division pursuant to the procedures of this part."). In the alternative, the denial of appeal based on "extenuating circumstances" is reviewable pursuant to § 704 of the Administrative Procedures Act as "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable [that] is subject to review on the review of the final agency action." 5 U.S.C. § 704.

Therefore, both the Branstads' claim for judicial review of the USDA's November 2, 2000, determination that they "converted" "wetlands" and the USDA's February 13, 2001, denial of the Branstads' request that their appeal be heard on the basis of "extenuating circumstances" are before the court for review.

### B. Subject Matter Jurisdiction

Nevertheless, the court must also consider the Secretary's challenges to the court's subject matter jurisdiction over this action for judicial review. The Secretary's challenge to subject matter jurisdiction is twofold. First, the Secretary contends that the court lacks subject matter jurisdiction, because the Branstads failed to exhaust their administrative appeals, as required by 7 C.F.R. § 11.13, *see Penner v. Madigan,* 974 F.2d 993, 995 (8th Cir. 1992); *Madsen v. USDA,* 866 F.2d 1035, 1037 (8th Cir.1989). Second, the Secretary

contends that this court lacks subject matter jurisdiction to enter injunctive relief, because to do so would violate the anti-injunction protections of the Commodity Credit Corporation (CCC) in 15 U.S.C. § 714b(c).

### 1. Exhaustion of administrative appeals

The Secretary's first challenge to the court's subject matter jurisdiction raises an analytical dilemma. The court agrees that, in the absence of exhaustion of administrative appeals, this court would have the discretion to dismiss this action for judicial review. *See Penner*, 974 F.2d at 996 ("No plaintiff challenged the Secretary's application of the freeze formula in an administrative appeal.... Therefore, the district court did not abuse its discretion in dismissing plaintiffs' claims for failure to exhaust administrative remedies."); *Madsen*, 866 F.2d at 1037 (only issues actually raised in an administrative appeal are actually exhausted for judicial review and the court does not abuse its discretion in dismissing other claims). However, the question presented here is, can failure to exhaust administrative appeals bar judicial review where one of the grounds for judicial review is that the USDA arbitrarily refused to permit the administrative appeal?

■ The Branstads contend that the USDA arbitrarily refused to find "extenuating circumstances" for the untimely appeal or ignored their assertion of "extenuating circumstances" where their appeal was "lost in the mail." As indicated above, the court believes that the denial of appeal is itself a reviewable issue, because it has been fully "exhausted," that is, the Director's denial of appeal based on "extenuating circumstances" was the final adverse

decision of the agency available from the NAD, pursuant to its procedures, on the Branstads' attempt to pursue administrative appeals. *See* 7 C.F.R. § 11.13(b) ("An appellant may not seek judicial review of any agency adverse decision appealable under this part without receiving a final determination from the Division pursuant to the procedures of this part."). However, to establish subject matter jurisdiction over the Branstads' claim that the USDA's November 2, 2000, final decision concerning "conversion" of "wetlands" is erroneous, the Branstads must establish that they were improperly barred from exhausting administrative appeals as to the November 2, 2000, decision.[2] Thus, to make a *prima facie* showing of subject matter jurisdiction for purposes of obtaining preliminary injunctive relief, the court concludes that the Branstads must first demonstrate that they have a "likelihood of success" on their claim that the USDA arbitrarily barred their appeal.

As this court explained in *Branstad I*, whether a party has the requisite "likelihood of success" on a claim for judicial review depends upon the standard of judicial review applicable to agency determinations. *See Branstad I*, 118 F.Supp.2d at 939–40. Therefore, the Branstads must make a showing that denial of their appeal was "arbitrary and capricious," "an abuse of discretion," or "otherwise contrary to law." *Id.* at 939 (citing 5 U.S.C. § 706; *Barthel*, 181 F.3d at 937; *Downer v. United States*, 97 F.3d 999, 1002 (8th Cir.1996)). As this court explained in *Branstad I*,

"This narrow review entails a 'searching and careful' de novo review of the administrative record presented to determine 'whether the decision was based on a consideration of the relevant factors

---

2. The same is true if the issue of denial of appeal is only "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable" that is only "subject to review on the review of the final agency action." 5 U.S.C. § 704.

and whether there has been a clear error of judgment.'" [*Downer*, 97 F.3d at 1002] (quoting *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)).

More specifically,

To perform this review the court looks to whether the agency considered those factors Congress intended it to consider; whether the agency considered factors Congress did not intend it to consider; whether the agency failed entirely to consider an important aspect of the problem; whether the agency decision runs counter to the evidence before it; or whether there is such a lack of a rational connection between the facts found and the decision made that the disputed decision cannot "be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). If the agency itself has not provided a reasoned basis for its action, the court may not supply one. *Id.*

Nonetheless, the reviewing court may not substitute its judgment for that of the agency and must give substantial deference to agency determinations. *Id.* This deference is particularly appropriate when the agency determination in issue concerns a subject within the agency's own area of expertise. *Marsh*, 490 U.S. at 377–78, 109 S.Ct. at 1861–62. An agency making fact-based determinations in its own field of expertise, particularly where those determinations are wrapped up with scientific judgments, must be permitted "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Id.* at 378, 109 S.Ct. at 1861.

*Downer*, 97 F.3d at 1002.

*Branstad I*, 118 F.Supp.2d at 939–40.

■ Applying these standards, it is clear that the Branstads have established at least a "likelihood of success on the merits" of their claim that the NAD's denial of their appeal was arbitrary and capricious. First, although the Branstads were informed that whether or not their untimely appeal would be allowed would be based on a consideration of whether they established "extenuating circumstances," *see* Plaintiffs' Motion For Preliminary Injunction, Attachment "H" (January 29, 2001, NAD denial of appeal), p. 1, in Assistant Director Crutchfield's February 13, 2001, letter conveying the Director's ruling, the standard was instead stated as failure to "establish *good cause* to relieve Mr. Branstad from the requirement of our rules." Plaintiffs' Motion For Preliminary Injunction, Attachment "J", p. 1 (emphasis added). This unexplained change in standards suggests that the agency did not even consider the factor it had told the Branstads would be determinative. *Cf. Branstad I*, 118 F.Supp.2d at 940 ("'To perform this review the court looks to whether the agency considered those factors Congress intended it to consider.'") (quoting *Downer*, 97 F.3d at 1002).

Furthermore, while the question was supposedly whether the Branstads had established "extenuating circumstances" for their failure to file a timely administrative appeal, the only factors Assistant Director Crutchfield's letter expressly states were considered were the NAD's rules for timely appeals. Plaintiffs' Motion For Preliminary Injunction, Attachment "J", p. 1. Thus, the agency considered factors that were not even at issue: It was evident from the Branstads' attempt to establish "extenuating circumstances" that they had not fulfilled to the letter the specific timeliness requirements of the rules. *Cf. Bran-*

*stad I*, 118 F.Supp.2d at 940 (considering " 'whether the agency considered factors Congress did not intend it to consider' ") (quoting *Downer*, 97 F.3d at 1002).

Similarly, the NAD's reliance on failure to comply with the letter of the rules indicates that the NAD failed entirely to consider an important aspect of the problem, which was precisely whether or not there were "extenuating circumstances" for the Branstads' failure to comply with the letter of the rules for timely appeals. *Cf. id.* (considering " 'whether the agency failed entirely to consider an important aspect of the problem' ") (quoting *Downer*, 97 F.3d at 1002). Indeed, nowhere in Mr. Crutchfield's letter is there any indication that the NAD even considered the Branstads' argument that their timely appeal notice had been lost in the mail or any suggestion that the Director considered any other facts asserted by the Branstads as establishing "extenuating circumstances" for the failure to perfect a timely appeal.

Still more disturbing is the NAD's determination that no "extenuating circumstances" (or "good cause," under the NAD's belatedly changed standard) had been shown, in the face of uncontroverted evidence that the Branstads' counsel timely prepared and mailed a proper notice of appeal. *Cf. id.* (considering " 'whether the agency decision runs counter to the evidence before it' ") (quoting *Downer*, 97 F.3d at 1002). The Secretary suggested at oral arguments that there was "no evidence" that the Branstads had ever timely mailed the notice of appeal or that it had been "lost in the mail." However, the court finds such evidence in counsel's representations that the appeal notice was in fact prepared and timely mailed. *See, supra,* note 1 (quoting Plaintiffs' Motion For Preliminary Injunction, Attachment "I") (February 1, 2001, request that appeal be allowed based on "extenuating circumstances"). As the court remarked at oral

arguments, as between representations of counsel that the notice of appeal was timely prepared and mailed, supported by documentary evidence that other steps in the appeal process had been completed, and the Secretary's utter failure to demonstrate the contrary, coupled with the court's familiarity with the frequency with which administrative agencies of the federal government lose files, applications, and other filings from other persons, the representations of counsel will prevail. Indeed, on the present record, it appears much more likely to the court that the NAD, rather than the United States Postal Service, lost the Branstads' appeal notice.

Moreover, there is such a lack of rational connection between the facts found and relied upon by the NAD in denying the appeal and the facts demonstrating "extenuating circumstances" for the failure to perfect a timely administrative appeal that " 'the disputed decision cannot "be ascribed to a difference in view or the product of agency expertise." ' " *Cf. id.* (quoting *Downer*, 97 F.3d at 1002, in turn quoting *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856). There is nothing about the determination of whether "extenuating circumstances" have been shown in the failure to perfect a timely administrative appeal that in any way depends upon agency expertise or commends a deferential review of the agency's determination of whether such circumstances have been established. *See id.* (citing *Downer*, 97 F.3d at 1002). Under the circumstances here, the Director's rather bizarre decision in response to the Branstads' attempt to establish "extenuating circumstances" for failure to perfect a timely appeal is entitled to no deference whatsoever.

Thus, the Branstads have established, at the very least, that they have a strong "likelihood of success on the merits" of

their claim that the NAD arbitrarily barred their appeal of the November 2, 2000, adverse decision. In these circumstances, the Branstads have also established at least a *prima facie* basis for the court's subject matter jurisdiction, because their failure to exhaust their administrative appeals is attributable to the arbitrary action of the agency, not to any voluntary or willful conduct on their part.

Moreover, were the court to adopt the Secretary's contention that judicial review is barred by failure to exhaust administrative appeals, even when the party seeking judicial review contends that the agency arbitrarily barred that party's attempts to pursue administrative appeals, an inescapable and wholly unpalatable "Catch–22" would be created: The agency could effectively bar any judicial review of its substantive determinations simply by arbitrarily denying leave to appeal. The Secretary's argument would also divest the court of subject matter jurisdiction over judicial review actions where the claimant is diligent, but unlucky, as is the case here, rather than barring judicial review only in those actions in which the claimant has slept on his or her rights to pursue further administrative action before taking recourse to the courts, either through voluntary or willful inaction, inexcusable neglect, or ignorance of the applicable administrative rules and remedies.

The Secretary's first challenge to the court's subject matter jurisdiction is therefore denied, at least for purposes of the Branstads' motion for a preliminary injunction.

### 2. *Violation of the CCC's anti-injunction protections*

The Secretary also contends that this court lacks subject matter jurisdiction over the Branstads' motion for a preliminary injunction, because such relief would run afoul of the anti-injunction protections for

the CCC stated in 15 U.S.C. § 714b(c). The court rejected the identical contention in *Branstad I,* as follows:

> [T]he Secretary contends that such relief is expressly and/or impliedly forbidden by 15 U.S.C. § 714b(c), which provides that the Commodity Credit Corporation (CCC), which funds and pays farm program benefits for which the Branstads have applied, "[m]ay sue and be sued, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property." The Secretary contends that, while this case has not been brought directly against the CCC, the practical effect of such an injunction, if granted, would affect the CCC's operation. This argument, of course, fails on its own terms. As the Secretary concedes, the Branstads' action is not brought against the CCC and no preliminary injunction in this action would be directed to the CCC. Nor, the court concludes, would it affect the operation of the CCC. Rather, the preliminary injunction would only enjoin the USDA from declaring the Branstads to be ineligible for farm program benefits administered by the CCC until the *conclusion of judicial review of* USDA determinations. Thus, preliminary injunctive relief would only be directed to and have an effect upon the operations of the USDA.

*Branstad I,* 118 F.Supp.2d at 935 (footnote omitted).

The only additional argument offered here in support of the same contention regarding the anti-injunction protections for the CCC is that the Eighth Circuit Court of Appeals found in *Penner v. Madigan,* 974 F.2d 993 (8th Cir.1992), that whether or not injunctive relief would affect payments administered by the CCC,

and consequently would necessarily run afoul of the anti-injunction provisions of 15 U.S.C. § 714b(c), is "a difficult issue." *See* Defendant's Response To Plaintiffs' Motion For Preliminary Injunction at 5. However, the Secretary acknowledges that, in *Penner*, the Eighth Circuit Court of Appeals declined to address this issue. *See id.* at 6.

■ The court is unpersuaded by *dicta* about the difficulty of an issue in a decision that did not even reach the question. *See Penner*, 974 F.2d at 996 ("Having concluded that plaintiffs' claims were properly dismissed for failure to exhaust administrative remedies, we do not reach the difficult issue whether the CCC anti-injunction statute bars their claims for declaratory relief."). Moreover, as the court suggested in *Branstad I*, the issue ultimately is *not*, in the court's view, a "difficult one," because it is plain that no injunction would issue against the CCC or have any affect on the CCC. Rather, only the USDA's decertification of the Branstads' eligibility for program benefits administered through the CCC would be affected. The Secretary's argument based on the anti-injunction protections for the CCC still "fails on its own terms," *see Branstad I*, 118 F.Supp.2d at 935, and the court is not deprived of subject matter jurisdiction on this ground, either.

## C. Injunctive Relief

Questions of the issues presented and the court's subject matter jurisdiction over the present action resolved, at least for purposes of the Branstads' motion for a preliminary injunction, the court at last turns to the question of the propriety of preliminary injunctive relief in the circumstances. The parties have not quibbled with the court's statement in *Branstad I* of the applicable considerations for preliminary injunctive relief, the so-called "*Dataphase* factors." Therefore, the court begins its analysis of the propriety of a preliminary injunction in the circumstances presented here with a recapitulation of those standards.

■ In *Branstad I*, this court summarized the applicable considerations as follows:

"The burden of establishing the propriety of a preliminary injunction is on the movant." *Baker Elec. Co-op., Inc. [v. Chaske]*, 28 F.3d [1466,] 1472 [ (8th Cir.1994) ].

As the Eighth Circuit Court of Appeals recently explained,

The relevant factors on a motion for a preliminary injunction are: "(1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest." *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485–86 (8th Cir.1993) (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc )). "A district court has broad discretion when ruling on requests for preliminary injunctions, and we will reverse only for clearly erroneous factual determinations, an error of law, or an abuse of that discretion." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir.1998) (citation omitted).

*Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 898 (8th Cir.2000); *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir.1999); *Iowa Right to Life Committee, Inc. v. Williams*, 187 F.3d 963, 966 (8th Cir.1999). In accordance with the usual practice in this circuit, this court will refer to these "relevant factors" as the "*Dataphase*

factors." *See, e.g., Entergy, Ark., Inc.,* 210 F.3d at 893. As the Eighth Circuit Court of Appeals has also explained,

> These factors are not a rigid formula. However, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Thus, to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm. *See Adam–Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir.1996).

*Bandag, Inc.,* 190 F.3d at 926; *Baker Elec. Co-op., Inc.,* 28 F.3d at 1472 ("No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance, they weigh towards granting the injunction. However, a party moving for a preliminary injunction is required to show the threat of irreparable harm.") (internal quotation marks and citations omitted).

*Branstad I,* 118 F.Supp.2d at 937–38. Applying these factors here, the court concludes, as it did in *Branstad I,* that a preliminary injunction should issue.

### 1. Likelihood of success on the merits

As to likelihood of success on the merits, the Secretary's first argument, that the court lacks subject matter jurisdiction over the Branstads' action because the Branstads failed to exhaust administrative appeals, was rejected above. The Secretary also contends, however, that the Branstads will be unable to demonstrate that the USDA failed to consider relevant factors, clearly erred in its judgment, or otherwise acted arbitrarily, capriciously, or contrary to law. The Secretary contends further that the Branstads conceded the issue of whether "wetlands" have been "converted" by entering into the good faith restoration agreement. Finally, the Secretary contends that the Branstads never sought or received permission to repair the tile drainage system on tract # 1475, but only on tract # 2024. The Branstads, however, argue that repairs to the tile drainage system were authorized, inspected, and approved by the USDA, which shows that the tile drainage system preexisted the cutoff date for applicability of the Swampbuster Act, that the repairs to the system did not exceed the permissible scope and effect of the drainage system, and that the USDA's determination otherwise is arbitrary and capricious.

The only truly different contention here from the arguments of the parties on this factor in *Branstad I* is that the Branstads did not seek or obtain USDA permission to repair the tile drainage system on tract # 1475. This argument would be considerably more persuasive if a *different* tile drainage system were involved on this tract from the one at issue in *Branstad I.* However, where the Branstads sought and obtained the USDA's permission, inspection, and approval for their repairs of the *same* tile drainage system, even if they overlooked the administrative nicety that the drainage system affected *two* tracts, the difference does not significantly change the balance on this factor as found in *Branstad I.* Moreover, as in *Branstad I,* the court cannot find in the good faith restoration agreement a "concession" that protected "wetlands" existed or that the prior "wetland" designation was correct. *See Branstad I,* 118 F.Supp.2d at 941; Defendant's Exhibit A. Rather, the restoration agreement simply concedes that the land was previously *designated* as "wetlands," without conceding the correctness of that designation.

Therefore, the Branstads have sufficient likelihood of success on the merits of their claim for judicial review of the November

2, 2000, agency determination, in the sense of support for their position in governing law for the relief they seek, *see Branstad I*, 118 F.Supp.2d at 940–41, that this factor weighs in favor of injunctive relief.

### 2. Irreparable harm

As this court explained in *Branstad I*, "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies. Thus, to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm." *Id.* at 941 (internal quotation marks and citations omitted). The Branstads contend that the USDA's enforcement actions will put them out of the farming business, whereas, if those enforcement actions are enjoined, they have found a lender who will be willing to finance their farming operations for another year. The Secretary contends that the Branstads should not be heard to complain that denial of farm program benefits will irreparably harm their farming operations, when they understood that that would be a consequence of their failure to comply in a timely manner with the good faith restoration agreement. The Branstads reply that, if they complete the restoration agreement in the interim, the Secretary will likely argue that this action is moot, effectively leaving them with no means to obtain judicial review of erroneous administrative determinations.

The court concludes that the Branstads have made the requisite showing of "irreparable harm." Even if they could be fully compensated for monetary losses imposed by the USDA's enforcement action, for example, by reimbursement for disgorged farm program benefits or daily fines for noncompliance with the restoration agreement, they could not be fully compensated by damages for the loss of the intangible value of their farming operation or the intangible costs of their likely bankruptcy. Moreover, they would be deprived of the opportunity to comply with the restoration agreement, if this court ultimately concludes that the USDA's November 2, 2000, decision should be affirmed. Finally, the court is persuaded that, at least for purposes of a motion for preliminary injunction, the Branstads' have made a colorable argument that compliance with the restoration agreement might "moot" the issues presented here, thus permitting the agency's actions to evade judicial review. Thus, as in *Branstad I*, this factor weighs strongly in favor of granting the Branstads' motion for a preliminary injunction.

### 3. Balance of harms and public interest

Next, the court must consider "the balance between the harm to the movant and the injury that the injunctions issuance would inflict on other interested parties and the public interest." *Branstad I*, 118 F.Supp.2d at 942 (internal quotation marks, editorial marks, and citations omitted). The Branstads contend that, since any supposed "conversion" of "wetlands" occurred in 1997, no incrementally significant additional damage from a wrongful "conversion" will occur if the court maintains the status quo. Moreover, the Branstads contend that if the ultimate decision in this judicial review action goes against them, they clearly have no other alternative than to restore the "wetlands," because they cannot afford the financial consequences of refusing to complete the restoration agreement. Counsel for the Secretary contended at oral arguments that a better showing had been made in this case than in *Branstad I* of the impact of wetlands conversion upon the environment and the public interest in prevention of such wetlands conversion. Moreover, the Secretary argues that the substantial potential harm to the environment and the public interest, if the improper conversion of wetlands on tract #1475 is

permitted to stand, outweighs the cost to the Branstads of temporarily disabling the tile drainage system, which the Secretary points out the Branstads have represented would take very little time and only cost approximately $1,000.

The court by no means denigrates the importance of and public interest in prevention of wetlands conversion, as embodied in the "Swampbuster" Act. Nevertheless, this final *"Dataphase* factor" still weighs in favor of issuance of a preliminary injunction. Issuance of a preliminary injunction will simply maintain the status quo, without imposing additional environmental damage that cannot, to some extent, be ameliorated if the Branstads ultimately are compelled to complete the restoration agreement, whereas the harm to the Branstads of permitting enforcement action to go forward is irreparable. There is also a public interest in proper application of the Swampbuster Act and the urgency of the interests the Act was designed to protect cannot justify arbitrary and capricious agency action or failure to maintain the status quo while judicial review of agency action is undertaken.

Finding that all of the pertinent factors weigh in favor of granting the Branstads' motion for a preliminary injunction on enforcement actions by the USDA, the court will enter such an injunction.

### D. Rule 65's Bond Requirement

Although neither of the parties made any mention of the requirement of security for issuance of a preliminary injunction, found in Rule 65(c) of the Federal Rules of Civil Procedure, the court cannot ignore the requirements of the Rule. Rule 65(c) provides, in pertinent part, as follows:

(c) **Security.** No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such

costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.

FED. R. CIV. P. 65(c). As this court explained in *Branstad I,* "The bond posed under Rule 65(c) is a security device, not a limit on the damages the USDA defendants may obtain against the Branstads if the facts warrant such an award." *Branstad I,* 118 F.Supp.2d at 944 (internal quotation marks, editorial marks, and citations omitted).

■ In the present case, there is even less basis in the record for determining a proper bond than there was in *Branstad I. See id.* (noting the lack of exhibits or other evidence concerning penalties for noncompliance with the restoration agreement). However, as in the preceding case, the record does suggest that the Branstads could disable the tile drainage system promptly, and at relatively little cost, should restoration be required. Therefore, the court once again concludes that the extent to which the USDA may incur "costs and damages" as the result of being "wrongfully enjoined or restrained," *see* FED. R. CIV. P. 65(c), in this case is the total of *minium* daily penalties for noncompliance with the restoration agreement for the brief period of time it would take the Branstads to disable the tile drainage system. *See Branstad I,* 118 F.Supp.2d at 944. Therefore, the court will impose a requirement of a bond of $3,000, in accordance with Rule 65(c), before the preliminary injunction will issue.

### III. CONCLUSION

The court concludes that the Branstads have made sufficient showing that the court has subject matter jurisdiction over the present action for purposes of their

motion for a preliminary injunction. Moreover, the court finds that, upon consideration of the *"Dataphase* factors," the court should issue a preliminary injunction enjoining the USDA's enforcement actions against the Branstads for conversion of wetlands on tract # 1475 and failure to comply with a restoration agreement as to that tract. Finally, the court finds that a bond in the amount of $3,000 is appropriate security for the USDA against the improvident grant of such a preliminary injunction in this case.

Therefore, the Branstads' May 9, 2001, Motion For Preliminary Injunction is **granted.** A preliminary injunction shall issue in accordance with 5 U.S.C. § 705, Rule 65 of the Federal Rules of Civil Procedure, and this order.

**IT IS SO ORDERED.**